## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN DOE COMPANY, c/o Christopher W. Jones, Womble Carlyle Sandridge & Rice LLP, 555 Fayetteville Street, Suite 1100, Raleigh, NC 27601, <br><br>*Plaintiff*, <br><br>v. <br><br>CONSUMER FINANCIAL PROTECTION BUREAU, 1700 G St NW, Washington, DC 20552; and <br><br>RICHARD CORDRAY, in his official capacity as Director of the Consumer Financial Protection Bureau, 1700 G St NW, Washington, DC 20552, <br><br>*Defendants*. | Civil Action No. _____ |

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff complains of the Consumer Financial Protection Bureau and its Director (the "Director") (collectively, the "Bureau" or "CFPB") as follows:

### INTRODUCTION

1.     This is an action to prevent the Bureau from imposing irreparable harm on Plaintiff unless and until the Bureau is subject to the checks and balances required by the U.S. Constitution's separation of powers.

2.     On October 11, 2016, the Court of Appeals for the District of Columbia Circuit "conclude[d] that the CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *PHH Corp. v. CFPB*, 839 F.3d 1, 36 (D.C. Cir. 2016). The D.C. Circuit held that the Bureau could nonetheless continue to function if the President of the United

States had "the power to supervise and direct the Director of the CFPB, and . . . remove the Director at will at any time." *Id.* at 69. The Court of Appeals determined that it could impose this constitutional fix and ordered that it be put into effect "by severing the for-cause removal provision from [12 U.S.C. § 5491(c)(3) ('The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office.')]." *Id.*

3.     The Bureau is delaying the implementation of that constitutional remedy.  On November 18, 2016, the Bureau timely filed a petition for rehearing en banc.  The filing of this petition has delayed the issuance of the mandate in *PHH Corp.*  As a result, the Bureau is currently operating as an unconstitutional agency: the structural defect that the D.C. Circuit identified remains, but the remedy the panel fashioned is not yet effective.

4.     On November 23, 2016, the Bureau served a Civil Investigative Demand (the "CID") on Plaintiff.

5.     On December 13, 2016, Plaintiff filed a petition to set aside or modify the CID (the "Petition") because, among other reasons, the Bureau was unconstitutionally structured when it issued the CID.  Plaintiff also requested that the Petition be given confidential treatment under 12 C.F.R. § 1080.6(g).

6.     On January 6, 2017, the Bureau informed Plaintiff that the Director had denied Plaintiff's Petition and request for confidential treatment.  The Bureau also stated that the Director's decision and Plaintiff's Petition, including the CID, "will be available to the public on the CFPB's website on or after January 13."  The publication of this request will cause irreparable harm to Plaintiff's business and accumulated goodwill.

7.     Plaintiff will suffer further irreparable harm if the Bureau initiates an enforcement action against Plaintiff.  While Plaintiff is confident that it would ultimately prevail in any such

action—Plaintiff complies with applicable law and is not subject to the Bureau's jurisdiction—it has a constitutionally protected liberty interest in ensuring that the Bureau is subject to checks and balances when wielding its enormous and far-reaching powers.

8.      The Constitution requires that the Bureau take no further action against Plaintiff, including publication of Plaintiff's Petition, until the separation of powers violation identified by the D.C. Circuit has been remedied.

9.      Plaintiff seeks a declaratory judgment and injunction preventing the Bureau from taking any further action against Plaintiff until either: (1) the President has the power to remove the Director at will or (2) the Bureau is otherwise brought into compliance with the Constitution.

## PARTIES

10.     Plaintiff is a limited liability company organized under the laws of the State of California with its principal place of business in Manila, Philippines.

11.     Defendant Consumer Financial Protection Bureau is an agency of the United States charged with enforcing federal consumer financial laws. The Bureau's principal office is located in the District of Columbia.

12.     Defendant Richard Cordray is the Director of the Consumer Financial Protection Bureau. The Director is sued in his official capacity.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 2201.

14.     Venue lies in the District of Columbia under 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

### I.      Plaintiff's Business

15.     Plaintiff is in the business of purchasing and selling the right to certain income streams.

3

16.     Plaintiff purchases income streams from individuals who are entitled to receive periodic payments from a pension or similar source and who wish to sell a portion of the income stream derived from those payments. Plaintiff purchases those income streams at a discount, which reflects both the time value of money and the risk of non-payment. The existence and size of that discount are clearly and conspicuously disclosed to the seller.

17.     Plaintiff sells income streams to individuals who wish to buy the right to receive a monthly income stream for a fixed period, usually five or ten years.

18.     Plaintiff's purchasing and selling activities include neither the offering or providing of credit or financial advisory services, nor the assignment of pensions or pension payments. Rather, Plaintiff purchases and sells assets: the right to receive income streams derived from periodic payments received by sellers.

## II.     The Bureau's Powers and Unconstitutional Structure

19.     "[W]hen measured in terms of unilateral power, the Director of the CFPB is the single most powerful official in the entire U.S. Government, other than the President." *PHH Corp.*, 839 F.3d at 17. This concentration of power in the hands of an unelected, unaccountable director threatens the individual liberty protected by the Constitution's separation of powers. *See Bowsher v. Synar*, 478 U.S. 714, 730 (1986) ("The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty.").

20.     The Bureau has broad powers "to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a).

21.     Congress defined the term "covered person" to include "any person that engages in offering or providing a consumer financial product or service." *Id.* § 5481(6). A "financial

4

product or service," in turn, encompasses ten defined categories such as "extending credit and servicing loans," *id.* § 5481(15)(A)(i), and "such other financial product or service as may be defined by the Bureau," *id.* § 5481(15)(A)(xi).

22.     The Bureau's powers include "all authority to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law," *id.* § 5581(a)(1)(A), previously held by "the Board of Governors (and any Federal reserve bank, as the context requires), the Federal Deposit Insurance Corporation, the Federal Trade Commission, the National Credit Union Administration, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and the Department of Housing and Urban Development, and the heads of those agencies," *id.* § 5581(a)(2)(A).

23.     Congress has placed no meaningful limit on the Bureau's power to deem an act or practice "unfair, deceptive, or abusive." *Id.* § 5531(a).

24.     The Bureau has the unilateral power to deem any act or practice unfair as long as the Director "has a reasonable basis to conclude that," *id.* § 5531(c)(1), it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers," *id.* § 5531(c)(1)(A), and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition," *id.* § 5531(c)(1)(B).

25.     Similarly, the Bureau can declare an act or practice abusive in connection with the provision of a consumer financial product or service if it "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service." *Id.* § 5531(d)(1).

26.     The Bureau can also find an act or practice abusive if, in its view, the act or practice "takes unreasonable advantage of," *id.* § 5531(d)(2), "a lack of understanding on the part

of the consumer of the material risks, costs, or conditions of the product or service," *id.* § 5531(d)(2)(A), "the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service," *id.* § 5531(d)(2)(B), or "the reasonable reliance by the consumer on a covered person to act in the interests of the consumer," *id.* § 5531(d)(2)(C).

27.     These four alternative definitions of "abusive" give the Bureau virtually unconstrained authority to declare any act or practice abusive and they provide the marketplace with little, if any, notice of what acts or practices will be the subject of Bureau investigations or enforcement actions.

28.     Indeed, Director Cordray testified before Congress in 2012 that it is "[p]robably not useful to try to define a term like [abusive] in the abstract; we are going to have to see what kind of situations may arise where that would seem to fit the bill under the prongs." *CFPB v. ITT Educ. Servs., Inc.*, No. 1:14-CV-00292-SEB, 2015 WL 1013508, at *19 (S.D. Ind. Mar. 6, 2015) (quoting *How Will the CFPB Function Under Richard Cordray: Hearing Before the Subcomm. on TARP, Fin. Servs. & Bailouts of Pub. & Private Programs*, 112th Cong. 112–107, at 69 (2012)).

29.     The Bureau has vast investigatory and enforcement powers.  It can "conduct hearings and adjudication proceedings," 12 U.S.C. § 5563(a), and "issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, documents, or other material in connection with hearings," *id.* § 5562(b)(1).  In fact, the Bureau can issue a civil investigative demand to "any person" requiring that person to produce documents for inspection, file written reports or answers to questions, and give oral testimony as long as the Director "has reason to believe" that the person "may be in possession, custody, or control of any

documentary material or tangible things, or may have any information, relevant to a violation."
*Id.* § 5562(c)(1).

30.    While the Bureau's investigative demands are not self-enforcing—the Director must petition a federal district court to compel compliance—the Bureau is "accorded 'extreme breadth in conducting [its] investigations.'" *United States v. Capitol Supply, Inc.*, 27 F. Supp. 3d 91, 99 (D.D.C. 2014) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1517 (D.C. Cir. 1993)).   The courts' only role is to determine "whether 'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

31.    Given the Bureau's broad powers and the deferential standard of review, the Bureau has near unfettered power to issue subpoenas and compel compliance therewith.  Indeed, from the Bureau's inception in July 2011 to the present, it has "lost only 1 precomplaint discovery dispute."   Christopher L. Peterson, *Consumer Financial Protection Bureau Law Enforcement: An Empirical Review*, 90 Tul. L. Rev. 1057, 1094 (2016); *see CFPB v. Accrediting Council for Indep. Colleges & Sch.*, 183 F. Supp. 3d 79 (D.D.C. 2016) (appeal pending).

32.    Even in the absence of judicial enforcement, the Bureau's decision to pursue an investigation against "any person" injures that person's liberty by requiring them to expend resources and time responding to the investigation, and by imposing reputational and other harms on that person associated with being the focus of a federal investigation by a Director who is more powerful than the President within his broad and loosely defined jurisdiction.

33.     Specifically, the recipient of a civil investigative demand must choose whether to (1) comply with that demand by producing documents, filings written reports, answering questions, and providing oral testimony; (2) file a presumptively public petition to set aside or modify that demand; or (3) forfeit any objection to that demand by taking no action in response thereto.

34.     The Bureau also has the power to pursue a broad range of legal and equitable relief, including rescission or reformation of contracts, refund of moneys or return of real property, restitution, disgorgement or compensation for unjust enrichment, payment of damages or other monetary relief, public notification regarding the violation limits on the activities or functions of the person, and civil money penalties. *See* 12 U.S.C. § 5565(a)(2). The Bureau pursues this relief by filing suit in "a United States district court or in any court of competent jurisdiction of a state in a district in which the defendant is located or resides or is doing business," *id.* § 5564(f), or by conducting its own "adjudication proceedings" subject to deferential Administrative Procedure Act review, *id.* § 5563(a); *see also id.* § 5563(b)(4).

35.     Many of the Bureau's decisions are committed entirely to its discretion. For example, there is no check on the Bureau's discretion to initiate an investigation or file an enforcement action. These decisions occur "in the twilight of judicially unreviewable discretion" because a party aggrieved by those decisions has no recourse. *PHH Corp.*, 839 F.3d at 35. It is therefore critically important that the Director be supervised, directed, or checked by the President or by other directors.

36.     Presently, the Director is not supervised, directed, or checked by the President, other directors, or anyone.

37.     The Bureau is headed by a single director whom the President cannot remove for any reason other than "inefficiency, neglect of duty, or malfeasance in office."   12 U.S.C. § 5491(c)(3).   This removal restriction prevents the President from supervising, directing, or removing the Director at will.   *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 620 (1935); *PHH Corp.*, 839 F.3d at 15 & n.2.   As a result, "the Director enjoys more unilateral authority than any other officer in any of the three branches of the U.S. Government, other than the President."   *PHH Corp.*, 839 F.3d at 7.

38.     Congress does not supervise the Bureau because the Director—not Congress— funds the Bureau with an "amount determined by the Director to be reasonably necessary to carry out the authorities of the Bureau under Federal consumer financial law," up to 12 percent of the combined earnings of the Federal Reserve System.   12 U.S.C. § 5497(a)(1); *see also id.* § 5497(a)(2)(A)(iii).   Congress is prohibited from reviewing the Director's funding of the agency he controls.   *Id.* § 5497(a)(2)(C).

39.     While courts have a limited role in reviewing some of the Bureau's decisions, that review does not and cannot remedy the constitutional violation here.

40.     As an initial matter, the Bureau exercises unreviewable discretion on matters of constitutional import.   For example, the Bureau's decision whether to initiate an enforcement action against Plaintiff will not be reviewable.   And that decision affects Plaintiff's liberty.   *Cf. PHH Corp.*, 839 F.3d at 26 ("Before [a multi-member independent] agency can infringe your liberty in some way—for example, *initiating an enforcement action against you* or issuing a rule that affects your liberty or property—a majority of commissioners must agree." (emphasis added)).

41.     Moreover, "subsequent judicial review of individual agency decisions has never been regarded as sufficient to excuse a structural separation of powers violation." *Id.* at 7. Put differently, "the probability of judicial review of some agency action has never excused or mitigated an otherwise extant Article II problem in the structure of the agency." *Id.* at 36. Put still differently, an unconstitutional structure is an insurmountable obstacle for any federal agency to do anything, or restrict liberty to any degree, under the guise of legitimate exercise of governmental power.

**III.     The D.C. Circuit's Opinion in *PHH Corp.***

42.     The Court of Appeals correctly held in *PHH Corp.* that "the CFPB is unconstitutionally structured." 839 F.3d at 8. Judge Kavanaugh explains: "[T]he CFPB departs from settled historical practice regarding the structure of independent agencies. And that departure makes a significant difference for the individual liberty protected by the Constitution's separation of powers. . . . [T]he CFPB is unconstitutionally structured because it is an independent agency headed by a single Director." *Id.* at 36.

43.     The *PHH Corp.* Court fashioned a remedy for the Bureau's unconstitutional structure. The Court "sever[ed] the for-cause removal provision from [12 U.S.C. § 5491(c)(3)]," which will cause the Bureau to "operate as an executive agency" by giving the President the "power to supervise and direct the Director of the CFPB" and to "remove the Director at will at any time." *Id.* at 39. Once this remedy goes into effect, "the CFPB will continue to operate and perform its many critical responsibilities, albeit under the ultimate supervision and direction of the President." *Id.* at 10.

44.     The President currently lacks the power to supervise the Director because the Bureau has chosen to seek en banc review of the *PHH Corp.* decision. As a result, the mandate

10

has not issued and the constitutional remedy has not gone into effect. The Bureau is currently structured in violation of the Constitution's separation of powers.

45. The Court of Appeals filed its opinion in *PHH Corp.* on October 11, 2016. That same day, as is standard practice, the Clerk of Court issued an Order "withhold[ing] issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc." (Oct. 11, 2016, Order, Doc. No. 1640102 (attached as Exhibit A) (citing Fed. R. App. P. 41(b); D.C. Cir. Rule 41).) The Clerk also clarified that the Order was "without prejudice to the right of any party to move for expedited issuance of the mandate for good cause shown." (*Id.*)

46. Rather than expedite issuance of the mandate, the Bureau filed a timely petition for rehearing en banc. (*See* Bureau's Pet. Reh'g En Banc, Doc. No. 1646917 (filed Nov. 18, 2016) (attached as Exhibit B)); Fed. R. App. P. 40(a)(1) (providing that, in a civil case, a petition for rehearing "may be filed by any party within 45 days after entry of judgment if one of the parties is . . . a United States agency").

47. The Bureau's petition for rehearing is currently pending before the D.C. Circuit. (*See* D.C. Circuit Docket No. 15-1177 (last updated Jan. 9, 2017) (attached as Exhibit C).)

48. If the D.C. Circuit were to grant the Bureau's petition, issuance of the mandate would be "further postponed until final resolution of the rehearing." 16AA Catherine T. Struve, *Federal Practice & Procedure* § 3987 (4th ed. 2016).

49. Finally, any party seeking certiorari from the Supreme Court could move to stay the mandate pending the filing and resolution of its petition. *See* Fed. R. App. P. 41(d)(2).

11

50.     In short, the Bureau's continued resistance to the *PHH Corp.* Court's constitutional remedy could significantly delay issuance of the mandate and substantially extend the time within which the Bureau wields unconstitutional power.

51.     The Bureau has acknowledged that the *PHH Corp.* panel's constitutional remedy is not yet in place. In its petition for rehearing en banc filed in that case, the Bureau writes: "The panel *would sever* section 1011(c)(3), 12 U.S.C. 5491(c)(3), from the Consumer Financial Protection Act, 12 U.S.C. 5481, *et seq.*" (Bureau's Pet. Reh'g En Banc at 6 (emphasis added).) The Bureau's use of the phrase "would sever," rather than, for example, "has severed," reveals that the Bureau understands that it is currently operating under the structure that *PHH Corp.* found unconstitutional.

52.     The Bureau is continuing to wield its unconstitutional powers against entities such as Plaintiff, thereby imposing constitutional and other irreparable injuries on those entities.

## IV.     The Bureau's Ongoing Investigation of Plaintiff

53.     On November 23, 2016—more than a month after the D.C. Circuit found that the Bureau's unconstrained powers exceed constitutional limits—the Bureau served Plaintiff with the CID (attached as Exhibit D).

54.     The CID requires Plaintiff to respond to nine interrogatories, file two written reports, and produce ten categories of documents.  Complying with these demands for production of essentially every business and financial record ever generated by Plaintiff, as well as disclosure of every person or entity Plaintiff has done business with, would be oppressive, expensive, time-consuming, and exceptionally disruptive to Plaintiff's business.

55.     On December 8, 2016, Plaintiff met and conferred with the Bureau and asked the Bureau to withdraw the CID. The Bureau refused that request and elected to continue with the CID process.

56.     On December 13, 2016, Plaintiff petitioned the Director to set aside the CID. Plaintiff explained that the Director should withdraw the petition because "the CID is a product of the Bureau's unconstitutional structure" and "the CID does not relate to a consumer financial product or service and fails to seek information relevant to a legitimate purpose." (Pl.'s Pet. Set Aside or Modify CID at 1 (attached as Exhibit E).) Plaintiff also asked the Director not to publish Plaintiff's Petition, as publishing the details of the CID and Plaintiff's request to revoke that CID would irreparably harm Plaintiff's business.

57.     On Friday, January 6, 2017, the Bureau notified Plaintiff by email that the Director had denied Plaintiff's Petition and request for confidential treatment. (*See* Email from Bureau to Plaintiff (Jan. 6, 2017) (attached as Exhibit F).) The Bureau further stated that the Director's "Decision and Order along with the Petition will be available to the public on the CFPB's website on or after January 13, 2016 [sic]."[1] (*Id.*)

58.     The Bureau attached to that email the Director's Decision and Order (attached as Exhibit G). In that Decision and Order, dated January 5, 2017, the Director dismissed Plaintiff's constitutional objection to the Bureau's authority on the ground that Plaintiff's "constitutional challenge is not properly raised in this administrative proceeding . . . because 'government agencies may not entertain a constitutional challenge to authorizing statutes.'" (Director's Decision & Order 2 (quoting *United Space All., LLC v. Solis*, 824 F. Supp. 2d 68, 97 n.10 (D.D.C. 2011)).)

---

[1] Plaintiff understands the Bureau to mean that the documents will be published on or after Friday, January 13, 2017.

59.     Finding that Plaintiff had not presented a sufficient basis to revoke or set aside the CID, the Director ordered Plaintiff "to produce all responsive documents, items, and information within its possession, custody, or control that are covered by the CID, within 10 calendar days of [the] Decision and Order [i.e., by January 15, 2017]." (*Id.* at 6.) With respect to Plaintiff's request for confidential treatment, the Director determined that Plaintiff "has not shown good cause for non-public treatment of the CID, its Petition, and [the Director's] Order." (*Id.* at 5.)

60.     Plaintiff's business would be irreversibly damaged if the Bureau publicizes its investigation of Plaintiff or files an enforcement action against it. Since its inception, the Bureau has intentionally and carefully cultivated a reputation for ending business models with which it disagrees. It has cultivated this reputation by wielding the very unchecked powers that are discussed in this Complaint. As such, the mere public announcement of an investigation can be devastating to a company and deprive that company of due process.

61.     Publication of the Bureau's investigation will irreparably harm Plaintiff's business by irreversibly branding Plaintiff's business as unfair, deceptive, abusive, and illegal.

62.     Plaintiff employs and contracts with more than 100 people who provide various sales, accounting, collections, operational, and other services to Plaintiff.    To Plaintiff's knowledge, none of these people knows that the Bureau is investigating Plaintiff's business practices. Were they to become aware of such an investigation, most of these employees and agents would immediately begin looking for other employment. This is so because the Bureau is investigating whether Plaintiff's core business—purchasing income streams—violates the Bureau's interpretation of federal consumer financial law. This investigation imperils Plaintiff's very existence. Plaintiff's employees and agents will recognize this fact, and many will decide that they can no longer depend on Plaintiff as a reliable employer for themselves and an income

14

source for their families. Employees will also resign for fear that continued employment and participation in Plaintiff's business practices may subject them personally to civil or criminal liabilities.

63.    Plaintiff also depends on various service providers to hold and transfer money, facilitate the purchase and sale of income streams, and otherwise keep Plaintiff's business running.    These providers are sophisticated entities that are wary of adverse publicity or entanglement with the Bureau. They will sever their relationships with Plaintiff if the Bureau's investigation becomes public.    The loss of these relationships will prevent Plaintiff from functioning, thereby causing Plaintiff's employees to lose their livelihood and harming the third parties that have contracted with Plaintiff to buy income streams.

## COUNT I
### (Violation of the Separation of Powers)

64.    Plaintiff realleges and incorporates by reference the allegations contained in all previous paragraphs.

65.    Congress has placed massive legislative, executive, and judicial power "in the same hands," which is "the very definition of tyranny."   *In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir. 2013) (quoting The Federalist No. 47, at 269 (James Madison) (Clinton Rossiter ed., rev. ed. 1999)). The Bureau exercises legislative power by enacting regulations with the force of law, executive power by policing compliance with those regulations, and judicial power by adjudicating enforcement actions and imposing sanctions on those found to have violated those regulations.

66.    The Constitution provides: "The executive Power shall be vested in a President of the United States of America," U.S. Const. art. II, § 1, and the President "shall take Care that the Laws be faithfully executed, *id.* § 3.

67.     The President cannot take care that the Bureau faithfully executes the laws because the President cannot supervise, direct, or remove at will the Director.

68.     The Bureau's structure violates the separation of powers and departs from historical practice because, among other reasons, the Bureau is headed by a single director who is unaccountable to the President.

69.     In the weeks since the D.C. Circuit determined that the Bureau is unconstitutionally structured, the Bureau has (1) pursued an investigation of Plaintiff; (2) served Plaintiff with the CID; (3) denied Plaintiff's oral request that the Bureau withdraw the CID; (4) denied Plaintiff's Petition; and (5) denied Plaintiff's request for confidential treatment. Each of these decisions violates the Constitution, and each has caused Plaintiff to expend significant resources and time evaluating, responding to, and opposing the Bureau's ongoing investigation.

70.     Plaintiff will suffer irreparable injury to its business and reputation if the Bureau publicizes its unconstitutional investigation of Plaintiff.

71.     In addition, so long as the Bureau remains an independent agency headed by a single director, the Bureau will violate the Constitution's separation of powers by taking any action adverse to Plaintiff, including deciding whether to bring an investigatory or substantive enforcement action against Plaintiff.  That decision is imminent.  The Bureau has ordered Plaintiff to produce responsive documents, items, and information by January 15, 2017.  The Bureau will soon decide whether to bring an enforcement action against Plaintiff.  The initiation of such an action will cause irreparable harm to Plaintiff's business and reputation.

## COUNT II
### (Deprivation of Due Process)

72.     Plaintiff realleges and incorporates by reference the allegations contained in all previous paragraphs.

16

73. The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

74. Plaintiff has a liberty interest in being free from structurally unconstitutional exercises of federal power. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 480 (2010) ("[T]he Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." (quoting *Bowsher v. Synar*, 478 U.S. 714, 730 (1986))).

75. The Bureau's unconstitutional structure "departs from settled historical practice regarding the structure of independent agencies" and "that departure makes a significant difference for the individual liberty protected by the Constitution's separation of powers." *PHH Corp.*, 839 F.3d at 36.

76. The Bureau has infringed Plaintiff's liberty by (1) pursuing an investigation of Plaintiff; (2) serving Plaintiff with the CID; (3) denying Plaintiff's oral request that the Bureau withdraw the CID; (4) denying Plaintiff's Petition; and (5) denying Plaintiff's request for confidential treatment. The Bureau will further infringe Plaintiff's liberty if it initiates an enforcement action against Plaintiff or otherwise takes any action adverse to Plaintiff. These acts do and would deprive Plaintiff of liberty without due process because the Bureau is an independent agency headed by a single director.

## COUNT III
### (Administrative Procedure Act)

77. Plaintiff realleges and incorporates by reference the allegations contained in all previous paragraphs.

78. Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the

17

meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Bureau's decision to publish Plaintiff's Petition, the CID, and the Director's Decision and Order constitutes reviewable agency action under the APA.

79.     The U.S. Supreme Court has held that a federal agency's "decision to disclose" a document to the public qualifies as "reviewable agency action" under the APA. *Chrysler Corp. v. Brown*, 441 U.S. 281, 318 (1979). Accordingly, "[a] party may seek judicial review under the APA of an agency's disclosure of information when that disclosure is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Creed v. NTSB*, 758 F. Supp.2d 1, 4 n.4 (D.D.C. 2010) (quoting *Chrysler*, 441 U.S. at 317).

80.     The Bureau's regulations require the Director to consider whether good cause exists to maintain the confidentiality of a petition for an order modifying or setting aside a civil investigative demand and the Director's order in response thereto. *See* 12 C.F.R. § 1080.6(g). Because the Bureau is currently unconstitutionally structured, it cannot make a valid good cause determination. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012) (vacating determination made by Copyright Royalty Board "[b]ecause the Board's structure was unconstitutional at the time it issued its determination").

81.     The Director's determination that good cause exists to publicly disclose Plaintiff's Petition, the CID, and the Director's Decision and Order is therefore arbitrary, capricious, and contrary to law. As a result, the Court should vacate the Bureau's decision to disclose such documents and enjoin their publication.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A. enter an order and judgment declaring the Bureau's current structure unconstitutional;

B. enter an order and judgment enjoining the Bureau from taking any further action against Plaintiff, including publication of Plaintiff's petition to set aside or modify civil investigative demand or initiation of an enforcement action against Plaintiff;

C. enter an order and judgment vacating the CID and the Director's Decision and Order in response to Plaintiff's Petition;

D. award Plaintiff its costs and attorneys' fees pursuant to any applicable statute or authority; and

E. award any other relief this Court deems just and appropriate.

This the 9th day of January, 2017.

**WOMBLE CARLYLE SANDRIDGE & RICE LLP**

/s/ Christopher W. Jones
Christopher W. Jones
*Pro Hac Vice Motion Pending*
Samuel B. Hartzell
*Pro Hac Vice Motion Pending*
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8173
Facsimile: (919) 755-6180
E-mail: cjones@wcsr.com
        shartzell@wcsr.com

Cathy A. Hinger
DC Bar No. 473697
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 857-4489
Facsimile: (202) 261-0029
E-mail: chinger@wcsr.com

**DORSEY & WHITNEY LLP**

/s/ Ji-Hyun Jennifer Lee
Ji-Hyun Jennifer Lee
DC Bar No. 1029193
1801 K Street NW, Suite 750
Washington, DC 20006
Telephone: (202) 442-3572
Facsimile: (202) 315-3682
E-mail: lee.jenny@dorsey.com

Eric Epstein
*Pro Hac Vice Motion Pending*
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9309
Facsimile: (718) 877-3719
E-mail: epstein.eric@dorsey.com

*Attorneys for Plaintiff*

## VERIFICATION

I, ████████████,[2] declare as follows:

1. I am the manager of Plaintiff.

2. I have personal knowledge of Plaintiff, its activities, and the harm that would befall Plaintiff if the Consumer Financial Protection Bureau were to publicize its investigation of Plaintiff, initiate an enforcement action against Plaintiff, or to otherwise signal that it believes that Plaintiff is the appropriate target of Bureau investigation, regulation, or enforcement.

3. If called upon to testify I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning Plaintiff are true and correct.

This the 9th day of January, 2017.

Manager of Plaintiff

---

[2] Plaintiff is contemporaneously filing under seal an unredacted copy of this verification. Redaction is necessary to protect Plaintiff's anonymity.