# Exhibit E

UNITED STATES OF AMERICA
BEFORE THE CONSUMER FINANCIAL PROTECTION BUREAU

IN THE MATTER OF

███████████

**PETITION TO SET ASIDE OR MODIFY CIVIL INVESTIGATIVE DEMAND**

# TABLE OF CONTENTS

Page

Introduction ................................................................................................................. 1

Background ................................................................................................................... 2

Argument ..................................................................................................................... 3

I.      The Bureau Should Set Aside the CID ................................................................. 3

        A.      The CID Is Improper Because of the Bureau's Unconstitutional
                Structure ................................................................................................... 3

        B.      The CID Is Improper Because It Exceeds the Bureau's Jurisdiction .......... 5

        C.      The CID Is Improper As It Does Not Seek Information Relevant to a
                Legitimate Purpose ................................................................................... 7

II.     If the Bureau Does Not Set Aside the CID, the Bureau Should Modify It ........... 10

Request for Confidential Treatment ............................................................................... 12

Conclusion ................................................................................................................... 13

Exhibit A – Civil Investigative Demand

Exhibit B – Meet and Confer Statement of Counsel

Exhibit C – Certificate of Service

# TABLE OF AUTHORITIES

Page

**Cases**

*Reed v. Val-Chris Invs.*, No. 11-cv-371, 2011 U.S. Dist. LEXIS 139568
(S.D. Cal. Dec. 5, 2011) ........................................................................... 6

*Associated Container Transp., Ltd. v. United States*, 502 F. Supp. 505
(S.D.N.Y. 1980) ........................................................................................ 4

*Capela v. J.G. Wentworth, LLC*, No. 09-cv-882, 2009 U.S. Dist. LEXIS 89425
(E.D.N.Y. Sept. 24, 2009) ....................................................................... 5-6

*Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*,
No. 15-cv-1838, 2016 U.S. Dist. LEXIS 53644 (D.D.C. Apr. 21, 2016) ....... 1, 5, 7

*Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 684 F.3d 1332
(D.C. Cir. 2012) ...................................................................... 3, 4, 12

*Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 796 F.3d 111
(D.C. Cir. 2012) ........................................................................................ 4

*NLRB v. UPMC Presbyterian Shadyside,* No. 14-mc-00109,
2014 U.S. Dist. LEXIS 118253 (W.D. Pa. Aug. 22, 2014) .................................. 7

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ............................. 10

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1 (D.C. Cir. 2016) ........... 1, 4, 9, 10

*White v. Sam's East, Inc.*, No. 5:14-cv-26106, 2016 U.S. Dist. LEXIS 5353
(S.D.W.V. Jan. 15, 2016) ......................................................................... 10

**Statutes**

12 U.S.C. § 5481 ......................................................................................... 5, 8

12 U.S.C. § 5491(a) ...................................................................................... 5

████████████ .............................................................................................. █

████████████ .............................................................................................. █

12 U.S.C. § 5562 ...................................................................................... 1, 4, 7, 8

**Regulations**

12 C.F.R. § 1080.5 ........................................................................ 8

12 C.F.R. § 1080.6 ..................................................................... 1, 12

**Other Authorities**

GAO, ███████████████████ █ █████,
   http://www.gao.gov████████████ ................................................. 9

## INTRODUCTION

Pursuant to 12 U.S.C. § 5562(f) and 12 C.F.R. § 1080.6(e), ███████

███████████ hereby petitions to set aside or modify a Civil Investigative

Demand ("CID") issued to ██ by the Consumer Financial Protection Bureau (the

"Bureau") on November 23, 2016.

The Bureau should set aside the CID for two independent reasons. First, the U.S.

Court of Appeals for the District of Columbia Circuit has held that the structure of the

Bureau is unconstitutional. *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1

(D.C. Cir. 2016). Because the CID is a product of the Bureau's unconstitutional structure,

the CID is invalid.

Second, "where it is clear that an agency either lacks the authority to investigate

or is seeking information irrelevant to a lawful investigatory purpose, a court must set

such inquiry aside." *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls.*

*& Schs.*, No. 15-cv-1838, 2016 U.S. Dist. LEXIS 53644, at *5 (D.D.C. Apr. 21, 2016)

(dismissing action brought by Bureau to enforce Civil Investigative Demand). The

Bureau's investigative authority relates to consumer financial products and services. *Id.*

at *6. However, the CID does not relate to a consumer financial product or service and

fails to seek information relevant to a legitimate purpose. The CID is therefore improper.

If the Bureau does not set aside the CID, the Bureau should modify the CID in

several respects. As detailed below, much of the information being sought from ██ is

irrelevant to the stated purpose of the Bureau's investigation. Furthermore, the definition

of "Company," "you" and "your," as set forth in the CID, is overly broad, in that it

encompasses various persons and entities other than ██ itself.

## BACKGROUND

█████ offers only one product to consumers: the ability to contract for the sale of a portion of a customer's ██████████████ ("Asset") at a discount in exchange for an immediate lump-sum cash payment ("Purchase Program"). Consumers who participate in the Purchase Program ("Sellers") can use the proceeds from the immediate cash payment to fulfill near-term objectives, whether that be to fund home improvement projects, start a business, pay for medical care, or cover other expenses. Sellers ultimately derive from the ████████████████████████████████████████████████████.

█████ received the CID from the Bureau on November 23, 2016. The purpose of the Bureau's investigation, as described in the CID's Notification of Purpose, is

> to determine whether financial-services companies or other persons have engaged or are engaging in unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to ████████████████████████████████████████ or any other Federal consumer-financial law.

The Bureau also is seeking to determine "whether Bureau action to obtain legal or equitable relief would be in the public interest." A cover letter accompanying the CID notes that the CID is issued to ████ and is ████████████████████████████ ████████████████████████████.

The CID contains:

- Nine (9) Interrogatories;

- Two (2) Requests for Written Reports (including ten (10) total sub-parts); and

- Ten (10) Requests for Documents.

The information being sought relates to ███████████████████████ and ████████████████ *See* Requests for Written Reports 1-2; Interrogatories 2, 4, 7; Document Requests 2-4, 6-10. The CID defines an ██████████████████ ████████ as

███████████████████████████████████████████████████

*See* CID § II ("Definitions"), ¶ K. The CID defines an ██████████████████ as

███████████████████████████████████████████████████

*Id.* ¶ L.

None of the CID's requests seeks information regarding the provision of financial advisory services to consumers on individual financial matters.

## ARGUMENT

I.     **The Bureau Should Set Aside the CID.**

A.     **The CID Is Improper Because of the Bureau's Unconstitutional Structure.**

In *Intercollegiate Broadcast Systems v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012), *cert. den.* 133 S.Ct. 2735 (2013), the U S Court of Appeals for the District of Columbia Circuit held that the rules governing the Copyright Royalty Board violated the Appointments Clause of the U.S. Constitution. Specifically, such rules improperly prevented the removal of Copyright Royalty Judges, except on a for-cause basis. The Court of Appeals remedied this constitutional violation by making the Judges

removable without cause. However, the Court of Appeals also vacated a prior determination made by the Board, because "the Board's structure was unconstitutional at the time it issued its determination." *Id*. at 1342. Later, after the Appointments Clause violation had been remedied, the Board reheard the matter on remand. *See Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 796 F.3d 111 (D.C. Cir. 2012).

The CID at issue here is flawed for precisely the same reason as the determination of the Copyright Royalty Board that was at issue in *Intercollegiate*. Specifically, as previously mentioned, the U.S. Court of Appeals for the District of Columbia Circuit has determined that the Bureau's structure violates the Appointments Clause. In particular, the Bureau "is unconstitutionally structured because it is an independent agency headed by a single Director." *PHH*, 839 F.3d at 90. As in *Intercollegiate*, the Court of Appeals has found that the appropriate way to remedy this problem is to make the Director of the Bureau removable without cause. *Id*. at 96.

However, that remedy has not yet been implemented, because the Court of Appeals has temporarily stayed the issuance of its mandate. Consequently, the structure of the Bureau was unconstitutional when the Bureau issued the CID, and the structure of the Bureau continues to be unconstitutional today. Thus, like the determination of the Copyright Royalty Board at issue in *Intercollegiate*, the CID has no constitutional basis. The Bureau therefore should withdraw the CID. *See* 12 U.S.C. § 5562(f)(3) (noting that a person may challenge a CID based on, among other things, "any constitutional or other legal right or privilege of such person."). In the alternative, the Bureau should stay any further action with respect to the CID until such time as the Bureau's appeal of the *PHH*

decision has reached a conclusion, and until such time as any constitutional remedy decided upon by the Court has been fully implemented.

### B.       The CID Is Improper Because It Exceeds the Bureau's Jurisdiction.

It is well-established that "a CID may be challenged if the scope of the demand is jurisdictionally defective." *Associated Container Transp., Ltd. v. United States*, 502 F. Supp. 505, 510 (S.D.N.Y. 1980). The Dodd-Frank Act tasks the Bureau with "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." *Accrediting Council*, 2016 U.S. Dist. LEXIS at *6 (quoting 12 U.S.C. § 5491(a)). Therefore, "the CFPB investigative authority is limited to inquiries to determine whether there has been a violation of any consumer financial laws." *Id.* at *7.

The subject matter of the CID at issue here falls outside of the Bureau's investigative authority. The CID appears to be based on a theory that ███████████ █████████████████████████████████ is a loan, and, as such, is a consumer financial product or service under 12 U.S.C. § 5481(15)(A)(i).

This theory is not well-founded under applicable law. For example, in *Capela v. J.G. Wentworth, LLC*, No. 09-cv-882, 2009 U.S. Dist. LEXIS 89425 (E.D.N.Y. Sept. 24, 2009), the defendant paid the plaintiff a lump sum in exchange for a series of future installment payments that an insurance company was scheduled to make to the plaintiff. The plaintiff later brought a Truth in Lending Act ("TILA") claim against the defendant with respect to the transaction. The Court dismissed the plaintiff's claim. The Court noted that "the application of TILA to the underlying transaction requires such stretching of the definitions of loan and credit that I find that TILA simply does not apply." *Id.* at *37. As the Court elaborated:

> [T]he fact that the plaintiff has alleged the applicability of
> TILA by calling the underlying transaction a loan does not
> make that description a reality. . . . You can call the
> assignment of structured settlement rights a TILA-governed
> loan as often as you like, but unless Congress says
> otherwise, a sale is still sale.

*Id.* at \*\*37-38. *Accord Reed v. Val-Chris Invs.*, No. 11-cv-371, 2011 U.S. Dist. LEXIS 139568, at \*\*7-8 (S.D. Cal. Dec. 5, 2011) (relying on the reasoning of the *Capela* decision to dismiss a TILA claim regarding the sale of future inheritance payments).

Currently, the Bureau is seeking to enforce another CID against J.G. Wentworth. *See Consumer Fin. Prot. Bureau v. J.G. Wentworth, LLC*, No. 2:16-cv-02773J (E.D. Pa.). However, J.G. Wentworth is opposing that enforcement action, and the U.S. Chamber of Commerce (the "Chamber") has filed an *amicus* brief in support of J.G. Wentworth's position. Both J.G. Wentworth and the Chamber have noted, among other things, that the CID issued by the Bureau to J.G. Wentworth lacks a proper basis in the Bureau's investigative jurisdiction. The court has not yet reached a decision. When the court ultimately reaches a decision, it is possible that the court's decision will further confirm that the Bureau's investigative jurisdiction is limited in ways tha █████████████

Based on *Capela* and *Reed*, the CID at issue here goes far afield from the Bureau's jurisdiction to regulate consumer financial products. The CID is thus improper. At a minimum, before proceeding further with this CID, the Bureau should wait for the Court's decision in the pending J.G. Wentworth matter.

### C.      The CID Is Improper As It Does Not Seek Information Relevant to a Legitimate Purpose.

The CID also exceeds the Bureau's investigative authority under the Dodd-Frank Act and prevailing law. It is well-established that an administrative subpoena is enforceable only if, among other things, the agency's investigation "has a legitimate purpose" and "the inquiry is relevant to that purpose." *NLRB v. UPMC Presbyterian Shadyside*, No. 14-mc-00109, 2014 U.S. Dist. LEXIS 118253, at **12-13 (W.D. Pa. Aug. 22, 2014) (requests had no legitimate relationship or relevance to the underlying alleged practices); *see also Accrediting Council*, 2016 U.S. Dist. LEXIS 53644, at *4 (inquiry must be set aside if the government "is seeking information irrelevant to a lawful investigatory purpose") (citation omitted). The Dodd-Frank Act similarly limits the scope of the Bureau's power to issue demands: a Bureau CID may be issued to any person only when the Bureau could have reason to believe that such a person has material, a thing, or information that is "relevant to a violation." 12 U.S.C. § 5562(c)(1).

The Bureau's CID fails to show that agency inquiry is relevant to a legitimate Bureau purpose or that the requests in the CID seek information "relevant to a violation." The Bureau's CID cover letter and CID explain that the Bureau is investigating ████ ████████████████████████████████. Any investigation, however, of suspected ██████████████████████ is improper, unless it is conducted in accordance with the boundaries established by the Dodd-Frank Act.

The Dodd-Frank Act limits the Bureau's authority to take an action for such violations to discrete entities specified in the statute; meaning, an action may only be brought against a (i) "covered person," (ii) a "service provider," or (iii) "any person" who provides substantial assistance with recklessness or knowledge to a covered person or

service provider. 12 U.S.C. §§ 5531(a); 5536(a)(1) and (3). Based upon the CID, the cover letter to the CID, and communications during the meet-and-confers, it appears that the Bureau's theory may be that ███████████████████████████████ ███████████████ But this is inconsistent with law.

A ████████████ is defined in relevant part as ██████████████ ████████████████████████████████████████████████████████

Because the Dodd-Frank Act sets forth numerous categories of "consumer financial products or services," it is necessary to check the CID itself to ascertain which product or service is at issue in the investigation. The CID's Notification of Purpose exists to satisfy the Bureau's statutory mandate to "advise" the CID recipient of the "the nature of the conduct constituting the alleged violation that is under investigation." *See* 12 U.S.C. § 5562(c)(2); 12 C.F.R. § 1080.5. Here, it explains that the investigation seeks to explore two sub-categories of consumer financial products or services: "offering or providing extensions of credit" or "offering or providing financial advisory services." *Compare* CID's Notification of Purpose, *with* 12 U.S.C. §§ 5481 (5), (6), and (15)(A)(i) and (viii). Given the specific products identified by the Bureau and █████████████████ ████████████████ the CID cannot be relevant to the investigation described in the Notification of Purpose, unless the investigation concerns ███ as a provider of (i) consumer credit or (ii) consumer financial advisory services.

The Bureau's investigation fails both tests. First, the investigation could not be relevant to "extending or offering credit" to consumers, because the ████████████ ████████████████ that are the subject of the CID's requests are not credit transactions, for the reasons noted above (*see* § I(B), *supra*).

Second, the Bureau's investigatory requests are irrelevant to its stated purpose to obtain information regarding a provider of "financial services." The Bureau's requests ask about ███████████████████████████ not advisory services, and the CID contains nothing pertaining to financial advisory services.

Therefore, since the facts sought by the CID relating to ██, including the Purchase Program, are irrelevant to the two sub-categories of consumer financial products at issue in this investigation, the information that is sought by the CID is incapable of falling within a legitimate purpose. For the foregoing reasons, the CID exceeds the legal boundaries of the Bureau's investigative authority and is improper.

The CID has no basis in existing statutory law or case law. If that were not enough, the CID also has no basis in the Bureau's regulations. A recent report by the Government Accountability Office ("GAO") found that ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██The GAO further noted that Bureau had "not taken an official position or issued any regulations regarding ██████████████████████, or taken any related enforcement actions." *Id*. Plainly, the CID itself is not an appropriate mechanism for announcing a new interpretation of the law, particularly given that the CID seeks information regarding past conduct. *See PHH*, 839 F.3d at 115-16 ("Retroactivity—in particular, a new agency interpretation that is retroactively applied to proscribe past conduct—contravenes the bedrock due process principle that the people should have fair notice of what conduct is prohibited.")

The Bureau therefore should set aside the CID. At a minimum, the Bureau should limit the scope of the CID by seeking only documents and information relevant to the threshold issue of ███████████████████████.

## II.     If the Bureau Does Not Set Aside the CID, the Bureau Should Modify It.

If the Bureau does not set aside the CID, the Bureau should make four specific modifications to the CID.

First, the temporal scope of the CID is overly broad. The CID requests documents and information dating ██████████████████. This five-year scope is unreasonable given that enforcement actions brought by the Bureau, whether in an administrative proceeding or in court, are subject to a three-year statute of limitation *See PHH*, 839 F.3d at 16; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("Thus, it is proper to deny discovery of matter that is relevant only to . . . events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case."). At most, the CID should request data dating back no further than December 1, 2013.

Second, the geographic scope of the CID is overly broad. The CID requests documents and information without any geographic restriction. However, as noted above, the CID evidently stems from a joint investigation being conducted with the ██████████ ████████████████. If so, then the investigation presumably is focused on customers located in ████████████████████. It is unclear why information regarding customers who does not reside in █████████ would be relevant to an investigation being conducted by the ██████████. *See White v. Sam's East, Inc.*, No. 5:14-cv-26106, 2016 U.S. Dist. LEXIS 5353, at **3-4 (S.D.W.V. Jan. 15, 2016) (rejecting demand for nationwide discovery when plaintiff's claims concerned West

Virginia). The Bureau should restrict the CID to transactions related to customers in ██████ ████ .

Third, the definition of "Company," "you" and "your," as set forth in the CID, renders many of the requests contained in CID impossible to comprehend or fulfill. In particular, the CID defines "Company," "you" and "your" to include, among other things, "consultants, attorneys, accountants, independent contractors, and other persons working for or on behalf of the foregoing." *See* CID § II ("Definitions"), ¶ E  The CID then asks ███ to gather, for example, "[a]ll of the Company's training manuals and materials." *See* Document Request 8. Thus, in effect, the CID appears to be asking ███ to gather all of the "training manuals and materials" used by any consultants, attorneys, accountants, or independent contractors who have performed work for ███ . ███ plainly would not have the ability to satisfy such a request, given that any such documents would belong to those persons and entities, not to ███ . The Bureau therefore should restrict the definition of "Company," "you" and "your" to ███ exclusively.

Fourth, two of the requests contained in the CID seek ████████████ ████████████ . *See* Interrogatory 5 (asking ████████ ██████ Request for Written Report 1 (asking ████████ ████████ These requests are improper because this information is irrelevant to the stated purpose of the investigation, which is to explore possible violations of ████████████████████████ ██████ There is no consumer protection law that regulates where a company may ████████████████████████ . The Bureau therefore should strike these requests entirely.

## **REQUEST FOR CONFIDENTIAL TREATMENT**

Pursuant to 12 C.F.R. § 1080.6(g), ██ requests confidential treatment of the CID, this Petition, and the Bureau's response to this Petition. Needless to say, the circumstances surrounding this CID are highly unusual—parallel to the instant investigation, a federal court of appeal has concluded that the Bureau, as currently constituted, is an unconstitutional entity. Assuming that the court's determination is upheld, it is possible that any number of decisions previously made by the Bureau will need to be unwound. *Intercollegiate*, 684 F.3d 1332.

As a result, until this constitutional defect is fixed, the Bureau should not issue an order that, as a practical matter, cannot be undone. That is the principal reason that publicizing the CID, this Petition, and the Bureau's response would be inappropriate— such a decision would be irreversible. Realistically, once such documents are published on the Bureau's Website, they cannot later be erased from the public record, and the damage to ██'s business reputation may be permanent. The Bureau should not make such a consequential decision while a cloud hangs over the constitutionality, and thus the legitimacy, of the Bureau's decision-making process.

To be sure, the CID is not equivalent to a notice of charges brought by any agency. Nonetheless, as the Bureau is aware, the publication of a CID may be misunderstood by the public to mean that a company is being accused of wrongdoing. The Bureau should not risk causing lasting and undeserved injury to ██'s business reputation by publicizing its investigation, at a time when the Bureau itself is operating without a clear constitutional mandate.

The Bureau therefore should treat the CID, this Petition, and the Bureau's response to this Petition as confidential.

## CONCLUSION

For the reasons set forth above, the Bureau should set aside the CID in its entirety. In addition, if the Bureau does not set aside the CID in its entirety, the Bureau should make the four requested modifications to the CID.

Dated: December 13, 2016

Respectfully submitted,

By: /s/ Christopher W. Jones/ CWJ

Christopher W. Jones
Samuel B. Hartzell
WOMBLE CARLYLE SANDRIDGE &
RICE LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
Telephone:  (919) 755-8173
Fax:  (919) 755-6180
cjones@wcsr.com

By:

J.H. Jennifer Lee
DORSEY & WHITNEY LLP
1801 K Street, N.W., Suite 750
Washington, DC  20006
Telephone:  (202) 442-3572
Fax:  (202) 315-3682
lee.jenny@dorsey.com

Eric Epstein
DORSEY & WHITNEY LLP
51 West 54nd Street
New York, NY  10019-6119
Telephone:  (212) 415-9309
Fax:  (718) 877-3719
epstein.eric@dorsey.com

*Counsel for* █████████████

13

# <u>EXHIBIT A</u>



Consumer Financia
Protection Bureau

1700 G Street NW, Washington, DC 20552

November 23, 2016

<u>Via E-Mail and Certified Mail</u>



Re:    Civil Investigative Demand served on ██████████████on
       November 23, 2016

Dear ████████:

  Attached is a civil investigative demand (CID) issued to ██████████████
████ by the Consumer Financial Protection Bureau (Bureau) under 12 C.F.R. § 1080.6
and § 1052(c) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12
U.S.C. § 5562. This CID is issued as part of an investigation being conducted jointly by
the Bureau and █████████████████████████.

  Rule 1080.6(c) of the Bureau's Rules Relating to Investigations requires that you
contact me as soon as possible to schedule a meeting (by telephone or in person) to be
held within ten calendar days of receipt of this CID in order to discuss and attempt to
resolve all issues regarding timely compliance with this demand. 12 C.F.R. § 1080.6(c);
see also Instruction B. The rule requires that you make available at this meeting
personnel with the knowledge necessary to resolve any such issues. Please be prepared
to discuss your planned compliance schedule, and whether it is possible to tier your
production by providing portions of the response prior to the due date.

  Please contact me immediately to schedule a meeting, which must be held within
ten (10) days of the date of issue of this CID. My telephone number is ██████████ I
look forward to your call.

Sincerely,

Alanna B.        Digitally signed by Alanna B.
Carbis           Carbis
                 Date: 2016.11.23 10:23:10
                 -08'00'

Alanna Carbis
Enforcement Attorney


Attachment

cc:



**Consumer Financial Protection Bureau**

United States of America
Consumer Financial Protection Bureau

# Civil Investigative Demand

**To**

This demand is issued pursuant to Section 1052 of the Consumer Financial Protection Act of 2010 and 12 C.F.R. Part 1080 to determine whether there is or has been a violation of any laws enforced by the Bureau of Consumer Financial Protection.

**Action Required** (choose all that apply)

☐ **Appear and Provide Oral Testimony**

| Location of Investigational Hearing | Date and Time of Investigational Hearing |
|---|---|
| | |
| | Bureau Investigators |

☑ **Produce Documents and/or Tangible Things, as set forth in the attached document, by the following date** 12/14/2016

☑ **Provide Written Reports and/or Answers to Questions, as set forth in the attached document, by the following date** 12/14/2016

## Notification of Purpose Pursuant to 12 C.F.R. § 1080.5

The purpose of this investigation is to determine whether financial-services companies or other persons have engaged or are engaging in unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or any other Federal consumer-financial law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

| Custodian / Deputy Custodian | Bureau Counsel |
|---|---|
| Jeffrey Paul Ehrlich/Maria Ardike<br>Consumer Financial Protection Bureau | Alanna B. Carbis/Leanne Hartmann |

| Date Issued | Signature | |
|---|---|---|
| 11/23/2016 | **Jeffrey Paul Ehrlich** | Digitally signed by Jeffrey Paul Ehrlich<br>Date: 2016.11.23 13:14:49 -05'00' |
| | **Name / Title** Jeffrey Paul Ehrlich/ Deputy Enforcement Director | |

**Service**

The delivery of this demand to you by any method prescribed by the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562, is legal service. If you fail to comply with this demand, the Bureau may seek a court order requiring your compliance.

**Travel Expenses**

Request a travel voucher to claim compensation to which you are entitled as a witness before the Bureau pursuant to Section 1052 of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562.

**Right to Regulatory Enforcement Fairness**

The CFPB is committed to fair regulatory enforcement. If you are a small business under Small Business Administration standards, you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

**Paperwork Reduction Act**

This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

**CIVIL INVESTIGATIVE DEMAND FOR
PRODUCTION OF DOCUMENTS, WRITTEN REPORTS, AND ANSWERS TO
INTERROGATORIES**

## I.   Requests.

### Interrogatories

1. Identify all past and present employees of the Company, providing their titles, describing their roles, and listing the dates of their employment.

2. Identify all persons █████████████████████████████████
   ████████████████████

3. Identify all ████████████████████████████████████████████
   ████████████████████████

4. Identify all third parties with whom the Company contracts or otherwise has a business relationship ████████████████████████████████
   ████████████████████████████████████████████████
   ██████████

5. Identify all ████████████████████████████ of the Company.

6. Identify all investigations, enforcement or other actions that have been brought against the Company by any government or private party, and provide the name of the initiating party, the type of action, and the current status of the matter, including a description of the resolution, if any.

7. Identify all actions in ██████████████████████████████████
   ████████████████████████████████████████████████

8. Identify all persons who participated in responding to this CID and the specific tasks performed by each person.

9. If, for any request, there are documents that would have been responsive but that are now unavailable, identify each document and its last known location or custodian, and explain why the document cannot be produced.

## **Requests for Written Reports**

1. In an Excel spreadsheet similar to the format below, produce the following information for each month and calendar year during the applicable period:

      i.   The Company's gross revenue from ███████████████████████
           ████████████████████████████████████████████████████████

      ii.  The Company's expenses from ███████████████████████████
           ██████████████████████████

      iii. The Company's net profit from ████████████████████████



| Month, Year | The Company's gross revenue from ████████ | The Company's expenses from ████ | The Company's net profit from ███████ |
|---|---|---|---|
|  |  |  |  |

2. In an Excel spreadsheet similar to the format below, produce the following information for each ████████████████████████████████████████
   ████████████████████████████████████████████████████████████████

      i.   ████████████████████████████████████████████████████████
      ii.  ████████████████████████████████████████████████████████
      iii. ████████████████████████████████████████████████████████
      iv.  ████████████████████████████████████████████████████████
      v.   ████████████████████████████████████████████████████████

      vi.  ████████████████████████████████████████████████████████

      vii. ████████████████████████████████████████████████████████



## Requests for Documents

1. Documents sufficient to show the corporate structure, organizational structure, personnel hierarchy, and operations of the Company and its parents, subsidiaries, and affiliates, including corporate and organizational charts, operating agreements, shareholder agreements, bylaws, articles of incorporation, articles of organization, and documents filed with government agencies.

2. All applications completed by consumers ███████████████████████████████████████████████████████████████████████████████████████████████████████

3. All contracts and agreements executed by the Company for all ███████████████████████████████████████████████████████████████████████████████████████

4. All documents that relate to the Company's requirements for ████████████████████████████████████

5. All documents showing the Company's ████████████████████████████████████████████

6. All ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

7. All of the Company's advertising and promotional materials for ██████████ ██████████████████ including but not limited to website postings, newspaper advertisements, trade publications, telemarketing scripts, direct mail promotions, pre-approved promotions, electronic media, radio, television scripts, and any other targeted advertising.

8. All of the Company's training manuals and materials, including call scripts, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

9. All documents discussing or reflecting ████████████████████████ ████████████████████████████████████████

10. All documents reflecting the Company's process and procedures for ████ ████████████████████

## II.   Definitions.

A.   **"Advertisement"** means any statement, illustration, depiction, or promotional material, whether in English or another language, that is designed to effect a sale or create interest in goods or services, regardless of where it appears.

B.   **"Affiliate"** means "any person that controls, is controlled by, or is under common control with another person." 12 U.S.C. § 5481(1).

C.   **"CID"** means the Civil Investigative Demand, including the Requests, Topics for Hearing, Definitions, and Instructions.

D.   **"CFPB"** or **"Bureau"** means the Bureau of Consumer Financial Protection.

E.   **"Company"** or **"you"** or **"your"** means ████████████████ ████████████████████████████ any successor in interest, and any parent companies, wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all principals, directors, officers, owners, employees, agents, representatives, consultants, attorneys, accountants, independent contractors, and other persons working for or on behalf of the foregoing.

F.   **"Deputy Enforcement Director"** refers to a Deputy Assistant Director of the Office of Enforcement.

G.   **"Document"** means any written matter of every type and description, including electronically stored information. "Document" includes any non-identical copy (such as a draft or annotated copy) of another document.

H.    "**Electronically Stored Information**," or "**ESI**," means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise) of any electronically created or stored information, including but not limited to e-mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted-items folder), word-processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device.

I.    "**Enforcement Director**" refers to the Assistant Director of the Office of Enforcement.

J.    "**Identify**" means to provide: (a) for natural persons, their name, title or position, present business affiliation, present business address, e-mail address, and telephone number, or if a present business affiliation or present business address is not known, the last known business address, home address, e-mail address, and telephone number; (b) for businesses or other organizations, the name, address, identities of officers, directors, or managers of the business or organization, and contact persons with e-mail addresses and telephone numbers, where applicable; and (c) for documents, the title, date, authors, recipients, Bates numbers, if applicable, type of document or some other means of identifying the document, and the present or last known location or custodian.



N.    "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

## III.    Instructions

A.    **Sharing of Information:** This CID relates to a nonpublic, law-enforcement investigation being conducted by the Bureau. The Bureau may make its files available to other civil and criminal federal, state, or local law-enforcement agencies under 12 C.F.R. §§ 1070.43(b)(1) and 1070.45(a)(5). Information you provide may be used in any civil or criminal proceeding by the Bureau or other agencies. As stated in 12 C.F.R. § 1080.14, information you provide in response to this CID is subject to the requirements and procedures relating to the disclosure of records and information set forth in 12 C.F.R. pt. 1070.

B.    **Meet and Confer:** As stated in 12 C.F.R. § 1080.6(c), you must contact Enforcement Attorney Alanna Carbis at ████████ as soon as possible to schedule a meeting (telephonic or in person) to discuss your response to the CID. The meeting must be held within **10** calendar days after you receive this CID or before the deadline for filing a petition to modify or set aside the CID, whichever is earlier.

C.    **Applicable Period for Responsive Materials:** Unless otherwise directed, the applicable period for the request is from **December 1, 2011** until the date of full and complete compliance with this CID.

D.    **Privilege Claims:** If any material responsive to this CID is withheld on the grounds of privilege, you must make the privilege claim no later than the date set for the production of the material. As stated in 12 C.F.R. § 1080.8(a), any such claim must include a schedule of the documents, information, or tangible things withheld that states, for each:

   1.    its type, specific subject matter, and date;

   2.    the names, addresses, positions, and organizations of all authors and direct or indirect recipients;

   3.    the specific grounds for claiming the privilege;

   4.    the request to which the privileged document, information, or thing  is responsive; and

   5.    its Bates number or range.

In addition, the person who submits the schedule and the attorney stating the grounds for the privilege must sign it. A person withholding material solely based on a claim of privilege must comply with the requirements of 12 C.F. R. § 1080.8 rather than file a petition for an order modifying or setting aside a demand under 12 C.F.R. § 1080.6(e). Please follow the enclosed Document Submission Standards for further instructions about producing redacted privileged documents.

E.    **Document Retention:** Until you are notified otherwise, you are required to retain all documents and other tangible things that you used or relied on in responding

to this CID. In addition, you must retain, and suspend any procedures that may result in the destruction of, documents, information, or tangible things that are in any way relevant to the investigation, as described in the CID's Notification of Purpose. You are required to prevent the destruction of relevant material irrespective of whether you believe such material is protected from future disclosure or discovery by privilege or otherwise. *See* 18 U.S.C. §§ 1505, 1519.

F.   **Modification Requests:** If you believe that the scope of the search or response required by this CID can be narrowed consistent with the Bureau's need for documents or information, you are encouraged to discuss such possible modifications, including modifications of the requirements of these instructions, with Enforcement Attorney Alanna Carbis at ████████ Modifications must be agreed to in writing by the Enforcement Director or a Deputy Enforcement Director. 12 C.F.R. § 1080.6(d).

G.   **Petition for Order Modifying or Setting Aside Demand:** Under 12 U.S.C. § 5562(f) and 12 C.F.R. § 1080.6(e), you may petition the Bureau for an order modifying or setting aside this CID. To file a petition, you must send it by e-mail to the Bureau's Executive Secretary at ExecSec@cfpb.gov, copying the Enforcement Director at Enforcement@cfpb.gov, within 20 calendar days of service of the CID or, if the return date is less than 20 calendar days after service, before the return date. The subject line of the e-mail must say "Petition to Modify or Set Aside Civil Investigative Demand." If a request for confidential treatment is filed, you must file a redacted public petition in addition to the unredacted petition. All requests for confidential treatment must be supported by a showing of good cause in light of applicable statutes, rules, Bureau orders, court orders, or other relevant authority.

H.   **Certification:** The person to whom the CID is directed or, if it is directed to an entity, any person having knowledge of the facts and circumstances relating to the production, must certify that the response to this CID is true and complete. This certification must be made on the form declaration included with this CID.

I.   **Scope of Search and Investigational Hearing:** This CID covers materials and information in your possession, custody, or control, including but not limited to documents in the possession, custody, or control of your attorneys, accountants, other agents or consultants, directors, officers, and employees.

J.   **Procedures Governing Hearing:** This CID is issued under section 1052 of the Consumer Financial Protection Act, 12 U.S.C. § 5562. The taking of oral testimony pursuant to this CID will be conducted in conformity with that section and 12 C.F.R. §§ 1080.6(a)(4), 1080.7, and 1080.9.

K.   **Document Production:** The Bureau encourages the electronic production of all material responsive to this CID; please follow the enclosed Document Submission Standards.

All productions sent by U.S. Postal Service should be addressed to:

Consumer Financial Protection Bureau
1700 G Street, NW
ATTN: Maria Ardike, SEFL, Office of Enforcement, Seat 4083-A
Washington, DC 20552

All productions sent by FedEx, UPS, or other courier should be addressed to:

Consumer Financial Protection Bureau
1625 Eye Street NW
ATTN: Maria Ardike, SEFL, Office of Enforcement, Seat 4083-A
Washington, DC 20006

Please provide your intended method of production and any tracking numbers by e-mail or telephone to Enforcement Attorney Alanna Carbis at Alanna.Carbis@cfpb.gov and ██████████

L. **Document Identification:** Documents that may be responsive to more than one request of this CID need not be submitted more than once. All documents responsive to this CID must be accompanied by an index that identifies: (i) the name of each custodian of each responsive document; (ii) the corresponding Bates number or range used to identify that person's documents; and (iii) the request or requests to which each document responds.

M. **Sensitive Personally Identifiable Information:** If any material called for by these requests contains sensitive personally identifiable information, sensitive health information of any individual, or Suspicious Activities Reports, please contact Enforcement Attorney Alanna Carbis at ████████████ before sending those materials to discuss ways to protect the information during production. You must encrypt electronic copies of such materials with encryption software acceptable to the Bureau. When submitting encrypted material, you must provide the encryption key, certificate, or passcode in a separate communication.

For purposes of this CID, sensitive personally identifiable information includes an individual's Social Security number alone or an individual's name, address, or phone number *in combination with* one or more of the following: date of birth, Social Security number, driver's-license number or other state-identification number, or a foreign country equivalent, passport number, financial-account number, credit-card number, or debit-card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

N. **Information Identification:** Each request for a written report or interrogatory in this CID must be answered separately and fully in writing under oath. All information submitted must clearly and precisely identify the request or requests to which it is responsive.

O.   **Declaration Certifying Records of Regularly Conducted Business Activity:** Attached is a Declaration Certifying Records of Regularly Conducted Business Activity, which may limit the need to subpoena you to testify at future proceedings to establish the admissibility of documents produced in response to this CID. Please execute this Declaration and provide it with your response.

P.   **Production of Advertisements**: A request for advertisements means a request for the material in the form made available to consumers.

    a.  In the case of any audio or video advertisements, provide:
        i.   a complete recording and a written script;
        ii.  a photoboard; and
        iii. a transcript.

    b.  In the case of an outward-facing website, provide:
        i.   a site map; and
        ii.  an image of each page titled after the name of the page as listed in the sitemap.

    c.  In the case of advertisements accessible on the internet via company websites, online message boards, forums, chat rooms, blogs, or social-networking sites, provide:
        i.   a written script or transcript of any audio or video content or clips;
        ii.  the date range that the material was accessible online;
        iii. the electronic address, or URL, at which the material is or was accessible, including any "mirrored" sites;
        iv.  a description of all search-engine-optimization techniques used; and
        v.   the identity of the person responsible for the posting, including all aliases or screen names.

    d.  In the case of files containing advertisements archived or accessible online (e.g., at or on file-transfer protocol (FTP) sites, peer-to-peer networks, private or public cloud services, advertising or affiliate networks, or databases), provide:
        i.   the file, including the file name and date;
        ii.  the date the file initially was posted online;
        iii. and all information necessary to locate, download, and view the file.

    e.  In the case of advertisements or promotional materials disseminated via e-mail, text message, or social media, provide:
        i.   the parent site of the mailing list that contains the listserv;
        ii.  the e-mail or mobile-marketing site;
        iii. the social-media site;
        iv.  and any company usernames.

   f. For social media sites (e.g., Facebook, LinkedIn, Twitter, Google+, Yelp, Pinterest), provide a complete export of all activity on the site, including shared photos, videos, images, wall posts, status updates, messages, and chat conversations.

Q.     All references to "**year**" or "**annual**" refer to the calendar year. Where information is requested "for each year," provide it separately for each year; where yearly data is not available, provide responsive information for the calendar year to date, unless otherwise instructed.

R.     **Duty to Estimate**: If you are unable to answer any interrogatory fully, supply such information as is available. Explain why such answer is incomplete, the efforts you made to obtain the information, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way to make an estimate, provide an explanation.

## <u>CERTIFICATE OF COMPLIANCE – DOCUMENTS</u>

I, _____, pursuant to 28 U.S.C. § 1746, declare that:

1. I have made a diligent inquiry of all persons who likely have possession of responsive documents and information, and I have confirmed that a diligent search has been made of all of the locations and files that likely contained responsive documents and information in the possession, custody, or control of █████

   ████████████████

2. All of the documents and information identified through the search described in paragraph 1 above required by the Civil Investigative Demand dated November 23, 2016 that are within the possession, custody, or control of ███ have been submitted to the Bureau custodian or deputy custodian identified in this Civil Investigative Demand.

3. If a document or tangible thing responsive to this Civil Investigative Demand has not been submitted, a claim of privilege in compliance with 12 C.F.R. § 1080.8 has been submitted.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on _____, 2016.

_____
Signature

**CERTIFICATE OF COMPLIANCE – INTERROGATORY ANSWERS AND REPORTS**

I, _____, pursuant to 28 U.S.C. §

1746, declare that:

1. In preparing all answers and reports in response to the enclosed Civil Investigative Demand, I have made a diligent inquiry of all persons who likely have possession of responsive documents and information, and I have confirmed that a diligent search has been made of all of the locations and files that likely contained responsive documents and information within the possession, custody, control, or knowledge of █████████████

2. Based on the information identified through the search described in paragraph 1 above, all answers and reports prepared in response to the enclosed required by the Civil Investigative Demand dated November 23, 2016 are true, correct, and complete.

3. If an interrogatory or a portion of an interrogatory has not been fully answered or a report or a portion of a report has not been completed, a claim of privilege in compliance with 12 C.F.R. § 1080.8 has been submitted.

I certify under penalty of perjury that the foregoing is true and correct. Executed on

_____, 2016.


_____

Signature

### DECLARATION CERTIFYING RECORDS OF
### REGULARLY CONDUCTED BUSINESS ACTIVITY
### Pursuant to 28 U.S.C. § 1746

I, _____, pursuant to 28 U.S.C. § 1746, declare that:

1.  I am employed by _____ as _____
    and by reason of my position am authorized and qualified to certify the
    authenticity of the records produced by ████████████████████████████ and
    submitted with this Declaration.

2.  The documents produced and submitted with this Declaration by ██ are true
    copies of records of regularly conducted activity that were:

    a.  made at or near the time of the occurrence of the matters set forth, by, or
        from information transmitted by, a person with knowledge of those
        matters;

    b.  kept in the course of the regularly conducted business activity; and

    c.  made by the regularly conducted business activity as a regular practice.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on

_____, 2016.


_____
Signature

## CERTIFICATE OF COMPLIANCE WITH RFPA

The Right to Financial Privacy Act of 1978 (RFPA) does not apply to the disclosure of financial records or information to the Consumer Financial Protection Bureau (CFPB) "in the exercise of its authority with respect to a financial institution." 12 U.S.C. § 3413(r). This civil investigative demand is also issued in connection with an investigation within the meaning of section 3413(h)(1)(A) of the RFPA. Therefore, in accordance with section 3403(b) of the RFPA, the undersigned certifies that, to the extent applicable, the provisions of the RFPA have been complied with as to the Civil Investigative Demand issued to █████████████████ to which this Certificate is attached.

The information obtained will be used to determine whether the persons named or referred to in the attached Civil Investigative Demand are in compliance with laws administered by the Consumer Financial Protection Bureau. The information may be transferred to another department or agency consistent with the RFPA.

Under the RFPA, good faith reliance on this certificate relieves the recipient and its employees and agents of any liability to customers in connection with the requested disclosures of financial records of these customers. *See* 12 U.S.C. § 3417(c).

Jeffrey Paul Ehrlich
Digitally signed by Jeffrey Paul Ehrlich
Date: 2016.11.23 13:13:44 -05'00'

Jeffrey Paul Ehrlich
Consumer Financial Protection Bureau
Deputy Director, Office of Enforcement

# Civil Investigative Demand Document Submission Standards

## CFPB Office of Enforcement

April 2015

# CID Document Submission Standards

This describes the technical requirements for producing electronic document collections to the Consumer Finance Protection Bureau ("the Bureau")'s Office of Enforcement. All documents shall be produced in complete form, in color when necessary to interpret the document, unredacted unless privileged, and shall not be edited, cut, or expunged. These standards must be followed for all documents you submit in response to the CID. Any proposed file formats other than those described below must be discussed with the legal and technical staff of the Bureau's Office of Enforcement prior to submission.

# Table of Contents

*CID Document Submission Standards* ............................................................... *2*

*Table of Contents* ............................................................................................ *3*

A.   *Transmittal Instructions* .......................................................................... *4*

B.   *Delivery Formats* ..................................................................................... *6*

   1)   **General ESI Standards** .......................................................................**6**

   2)   **Native and Image Production** ...........................................................**7**

     a)   Metadata File ....................................................................................7

     b)   Document Text....................................................................................9

     c)   Linked Native Files..........................................................................10

     d)   Images .............................................................................................10

     e)   Image Cross Reference File .............................................................10

   3)   **PDF File Production**...........................................................................**11**

   4)   **Transactional Data** ..........................................................................**11**

   5)   **Audio/Video/Electronic Phone Records** ..........................................**12**

C.   *Production of Partially Privileged Documents* ....................................... *14*

# A. **Transmittal Instructions**

1) A cover letter should be included with each production.   The following information should be included in the letter:
   a) Name of the party making the production and the date of the CID to which the submission is responsive.
   b) List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production (refer to the media by the unique number assigned to it, see ¶ 4)
   c) List of custodians, identifying:
      i) The Bates Range (and any gaps therein) for each custodian,
      ii) Total number of images for each custodian, and
      iii) Total number of native files for each custodian
   d) List of fields in the order in which they are listed in the metadata load file.
   e) Time zone in which emails were standardized during conversion (email collections only).
   f) The specification(s) or portions thereof of the CID to which the submission is responsive.
2) Documents created or stored electronically MUST be produced in their original electronic format, not converted to another format such as PDF.
3) Data may be produced on CD, DVD, USB thumb drive, or hard drive; use the media requiring the least number of deliverables.
   a) Magnetic media shall be carefully packed to avoid damage and must be clearly marked on the outside of the shipping container:
      i) "MAGNETIC MEDIA – DO NOT USE METAL DETECTOR"
      ii) "MAY BE OPENED FOR POSTAL INSPECTION"
   b) CD-R CD-ROMs should be formatted to ISO 9660 specifications;
   c) DVD-ROMs for Windows-compatible personal computers are acceptable;
   d) USB 2.0 thumb drives for Windows-compatible personal computers are acceptable;

   e) USB 3.0 or USB 3.0/eSATA external hard disk drives, formatted in a Microsoft
      Windows-compatible file system (FAT32 or NTFS), uncompressed data are
      acceptable.
4) Label all media with the following:
   a) Production date
   b) Bates range
   c) Disk number (1 of X), if applicable
   d) Name of producing party
   e) A unique production number identifying each production
5) All productions must be produced free of computer viruses.  Infected productions may
   affect the timing of your compliance with the CID.
6) All produced media must be encrypted. Encryption format must be agreed upon prior to
   production.
   a) Data deliveries should be encrypted at the disc level.
   b) Decryption keys should be provided separately from the data delivery via email or
      phone.
7) Passwords for documents, files, and compressed archives should be provided separately
   either via email or in a separate cover letter from the data.

# B.  Delivery Formats

## 1)  General ESI Standards

Before submitting any Electronically Stored Information ("ESI") or any other documents submitted in electronic form that do not conform completely to the listed specifications, you must confirm with the Bureau that the proposed formats and media types that contain such ESI will be acceptable.  You are encouraged to discuss your specific form of submission, and any related questions with the Bureau as soon as is practicable and not later than the Meet and Confer required pursuant to 12 C.F.R. § 1080.6(c).

All productions must follow the specifications outlined below:

De-duplication
De-duplication of documents should be applied across custodians (global); each custodian should be identified in the Custodian field in the metadata load file separated by semi-colon. The first name in the Custodian list should represent the original holder of the document.

Bates Numbering Documents
The Bates number must be a unique, sequential, consistently formatted identifier, i.e., an alpha prefix unique to each producing party along with a fixed length number, i.e., ABC0000001. This format must remain consistent across all productions. There should be no space in between the prefix and the number. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should hyphens or other separators be added or deleted.

Document Retention / Preservation of Metadata
The recipient of this CID should use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these

electronic materials as it existed at the time of the original creation.

2) **Native and Image Production**

In general, and subject to the specific instructions below: (1) produce electronic documents in their complete native/original format along with corresponding bates-labeled single page TIFF images; (2) scan and process all paper documents into single page TIFF images, OCR the images, and apply bates numbers to each page of the image; (3) produce fully searchable document level text for every produced document; and (4) produce metadata for every produced document in a data file that conforms to the specific instructions below.

a) Metadata File

All produced documents, regardless of their original file format, must be produced with the below-described metadata fields in a data file (.DAT).

i) The first line of the .DAT file must be a header row identifying the field names.

ii) The .DAT file must use the following default delimiters:

**TABLE 1:** DAT FILE DELIMITERS

| | | |
|---|---|---|
| Comma | ¶ | ASCII character (020) |
| Quote | þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

iii) Date fields should be provided in the format: mm/dd/yyyy

iv) All attachments should sequentially follow the parent document/email.

v) All documents shall be produced in both their native/original form and as a corresponding bates-labeled single page TIFF image; provide the link to the original/native document in the NATIVELINK field.

vi) Produce extracted metadata for each document in the form of a .DAT file, and include these fields (fields should be listed but left blank if not applicable):

**TABLE 2:**   DAT FILE FIELDS

| Field Name | Description |
|---|---|
| BATES_BEGIN | First Bates number of native file document/email |
| BATES_END | Last Bates number of native file document/email<br>**The BATES_END field should be populated for single page documents/emails |
| ATTACH_BEGIN | First Bates number of attachment/family range |
| ATTACH_END | Last Bates number of attachment/family range |
| GROUP_ID | A unique family identifier used to link documents/emails and attachments |
| PRIV | Indicate "YES" if document has a Privilege claim |
| ROG_NUM | Indicate Interrogatory number(s) document is responsive to. (ROG ##)  If multiple, separate by semi-colon |
| DR_NUM | Indicate Document Request document is responsive to. (DR ##) If multiple, separate by semi-colon |
| RECORDTYPE | Email: Populate field as "E-Mail"<br>Attachment: Populate field as "Attachment"<br>Email Attachment: Populate field as "Attachment (E-mail)"<br>Loose Native: Populate field as "E-Document"<br>Scanned Paper: Populate field as "Paper" |
| CUSTODIAN | Individual(s) or department(s) from which the record originated<br>**semi-colon should be used to separate multiple entries |
| FROM | Email:  Sender of email<br>Non-email: (empty)<br>**semi-colon should be used to separate multiple entries |
| TO | Email: Recipient(s) of email<br>**semi-colon should be used to separate multiple entries |
| CC | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Subject line of the email |
| DATE_SENT | Email: Date the email was sent |
| TIME_SENT | Email: Time the email was sent<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

| DATE_RECVD | Email: Date the email was received |
| --- | --- |
| TIME_RECVD | Email: Time the email was received |
| NATIVELINK | Hyperlink to the email or native file document<br>**The linked file must be named per the BATES_BEGIN Number |
| FILE_EXT | The file extension representing the email or native file document |
| AUTHOR | Email: (empty)<br>Non-email: Author of the document |
| DATE_CREATED | The date the electronic file was created |
| TIME_CREATED | The time the electronic file was created |
| DATE_MOD | Date an electronic file was last modified |
| TIME_MOD | Time an electronic file was last modified |
| PRINT_DATE | Date the document was last printed |
| PRINT_TIME | Time the document was last printed |
| FILE_SIZE | Size of native file document/email in KB |
| PGCOUNT | Number of pages in document/email |
| SOURCE | Email: Path to email container and email container name<br>Non-email: Original path to source archive folder or files |
| FOLDERPATH | Email: Folder path within email container<br>Non-email: Folder path to file |
| FILENAME | Email: Filename of loose email or subject of non-loose email<br>Non-email: original file name |
| MD5HASH | The 32 digit value representing each unique document |
| TEXTPATH | Contains path to OCR/Extracted text file that is titled after the document BATES_BEGIN |

b) Document Text
Searchable text of the entire document must be provided for every record, at the document level.

   i) Extracted text must be provided for all documents that originated in electronic format.
   Note: Any document in which text cannot be extracted must be OCR'd.

   ii) For documents redacted on the basis of any privilege, provide the OCR text for unredacted/unprivileged portions.

   iii) The text should be delivered in the following method: As multi-page ASCII text

files with the files named the same as the Bates_Begin field. Text files can be placed in a separate folder or included with the .TIFF files.

c) Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.

   i)   Native file documents must be named per the BATES_BEGIN number (the original file name should be preserved and produced in the FILENAME metadata field).

   ii)  The full path of the native file must be provided in the .DAT file in the NATIVELINK field.

d) Images

   i)   Images should be single-page, Group IV TIFF files, scanned at 300 dpi.

   ii)  File names should be titled per endorsed bates number.

   iii) Color should be preserved when necessary to interpret the document.

   iv)  Bates numbers should be endorsed on the lower right corner of all images.

   v)   For documents partially redacted on the basis of any privilege, ensure the redaction box is clearly labeled "REDACTED".

e) Image Cross Reference File

   i)   The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

**TABLE 3:**   IMAGE CROSS REFERENCE FILE FIELDS

| Field Title | Description |
|---|---|
| ImageID | The unique designation use to identify an image. |
|  | *Note: This imageID key **must** be a unique and fixed length number. This number will be used in the.DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be an eight digit number to allow for the possible increase in the size of a production.* |
| VolumeLabel | Optional |
| ImageFilePath | The full path to the image file. |
| DocumentBreak | The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document. |
| FolderBreak | Leave empty |

| BoxBreak | Leave empty |
|---|---|
| PageCount | Optional |
|  | *This file should not contain a header row.* |

SAMPLE:
IMG0000001,OPTIONALVOLUMENAME,E:\001\IMG0000001.TIF,Y,,,3
IMG0000002,OPTIONALVOLUMENAME,E:\001\IMG0000002.TIF,,,,
IMG0000003,OPTIONALVOLUMENAME,E:\001\IMG0000003.TIF,,,,
IMG0000004,OPTIONALVOLUMENAME,E:\001\IMG0000003.TIF,Y,,,1
IMG0000005,OPTIONALVOLUMENAME,E:\001\IMG0000003.TIF,Y,,,2
IMG0000006,OPTIONALVOLUMENAME,E:\001\IMG0000003.TIF,,,,

3) **PDF File Production**

When approved, Adobe PDF files may be produced in lieu of TIFF images for scanned paper productions (metadata must also be produced in accordance with the instructions above):

a) PDF files should be produced in separate folders named by the Custodian.

b) All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.

c) All attachments should sequentially follow the parent document.

d) All PDF files must contain embedded text that includes all discernible words within the document, not selected text only. This requires all layers of the PDF to be flattened first.

e) If PDF files are Bates endorsed, the PDF files must be named by the Bates range

f) The metadata load file listed in 2.a. should be included.

4) **Transactional Data**

If transactional data must be produced, further discussion must be had to ensure the intended export is properly composed. If available, a data dictionary should accompany the production, if unavailable; a description of fields should accompany transactional data productions. The following formats are acceptable:

- SQL Backup file
- MS Access
- XML
- CSV

- TSV
- Excel (with prior approval)

### 5) Audio/Video/Electronic Phone Records

a) Audio files must be produced in a format that is playable using Microsoft Windows Media Player. Types of audio files that will be accepted include:
- Nice Systems audio files (.aud). AUD files offer efficient compression and would be preferred over both NMF and WAV files.
- Nice Systems audio files (.nmf).
- WAV Files
- MP3, MP4
- WMA
- AIF

Produced audio files must be in a separate folder compared to other data in the production.

Additionally, the call information (metadata) related to each audio recording must be produced if it exists. The metadata file must be produced in delimited text format (DAT, CSV, or TXT), using a tab or pipe delimiter. Field names must be included in the first row of the metadata file. Please note that the field names are case sensitive and should be created as listed below. The metadata must include, if available, the following fields:

**TABLE 4:**   AUDIO METADATA FIELDS

| Field Name | Description |
| --- | --- |
| AgentName | Name of agent/employee |
| AgentId | Unique identifier of agent/employee |
| Group | Name for a collection of agents |
| Supervisor | Name of the Agent's supervisor |
| Site | Location of call facility |
| DNIS | Dialed Number Identification Service, identifies the number that was originally called |

| Extension | Extension where call was routed |
|---|---|
| CallDirection | Identifies whether the call was inbound, outbound, or internal |
| CallType | Purpose of the call |
| DURATION | Duration of call |
| CustomerId | Customer's identification number |
| CustomerCity | Customer's city of residence |
| CustomerState | Customer's state of residence |
| CallDateTime | Date and start time of call (MM/DD/YYYY HH:MM:SS) |
| CUSTOMERNAME | Name of person called |
| FileName | Filename of audio file |
| BATES_BEGIN | Unique number of the audio file |
| CALLEDPARTYNUMBER | The call center or phone number called |
| CALLSIZE | File size of audio file |
| CALLSERVICE | Call service code |
| MD5HASH | The 32 digit value representing each unique document |
| DOC_REQ | Document request number to which the file is responsive |
| CUSTODIAN | Individual(s) or department(s) from which the recording originated |
| FOLDERPATH | Folder path of the audio file in the original source |
| SOURCE | Original path to where the source file resided |
| TIMEZONE | The time zone of the original call |
| GROUPID | A unique group identifier for grouping multiple calls |
| CODEC | Encoding/decoding of the audio digital stream |
| BITRATE | The number of bits that are conveyed or processed per unit of time |

| Supported Date Format | Example |
|---|---|
| mm/dd/yyyy hh:mm:ss am/pm | 01/25/1996 10:45:15 am |

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly.

b) Video files must be produced in a format that is playable using Microsoft Windows

Media Player along with any available metadata. If it is known that the video files do not contain associated audio, indicate this in the accompanying transmittal letter. Types of video files accepted include:

- MPG
- AVI
- WMV
- MOV
- FLV

# C.  Production of Partially Privileged Documents

If a portion of any material called for by this CID is withheld based on a claim of privilege, those portions may be redacted from the responsive material as long as the following conditions are met.

a) If originally stored as native electronic files, the image(s) of the unredacted portions are submitted in a way that preserves the same appearance as the original without the redacted material (i.e., in a way that depicts the size and location of the redactions).  The OCR text will be produced from the redacted image(s).  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image(s).  Any metadata not being withheld for privilege should be produced in the DAT file; any content (e.g., PowerPoint speaker notes, Word comments, Excel hidden rows, sheets or columns) contained within the native and not being withheld for privilege should be tiffed and included in the production.

b) If originally in hard copy form, the unredacted portions are submitted in a way that depicts the size and location of the redactions; for example, if all of the content on a particular page is privileged, a blank, sequentially numbered page should be included in the production where the responsive material, had it not been privileged, would have been located.



**§ 1081.405   Decision of the Director.**

(a) Upon appeal from or upon further review of a recommended decision, the Director will consider such parts of the record as are cited or as may be necessary to resolve the issues presented and, in addition, will, to the extent necessary or desirable, exercise all powers which he or she could have exercised if he or she had made the recommended decision. In proceedings before the Director, the record shall consist of all items part of the record below in accordance with § 1081.306; any notices of appeal or order directing review; all briefs, motions, submissions, and other papers filed on appeal or review; and the transcript of any oral argument held. Review by the Director of a recommended decision may be limited to the issues specified in the notice(s) of appeal or the issues, if any, specified in the order directing further briefing. On notice to all parties, however, the Director may, at any time prior to issuance of his or her decision, raise and determine any other matters that he or she deems material, with opportunity for oral or written argument thereon by the parties.

(b) Decisional employees may advise and assist the Director in the consideration and disposition of the case.

(c) In rendering his or her decision, the Director will affirm, adopt, reverse, modify, set aside, or remand for further proceedings the recommended decision and will include in the decision a statement of the reasons or basis for his or her actions and the findings of fact upon which the decision is predicated.

(d) At the expiration of the time permitted for the filing of reply briefs with the Director, the Office of Administrative Adjudication will notify the parties that the case has been submitted for final Bureau decision. The Director will issue and the Office of Administrative Adjudication will serve the Director's final decision and order within 90 days after such notice, unless within that time the Director orders that the adjudication proceeding or any aspect thereof be remanded to the hearing officer for further proceedings.

(e) Copies of the final decision and order of the Director shall be served upon each party to the proceeding, upon other persons required by statute, and, if directed by the Director or required by statute, upon any appropriate State or Federal supervisory authority. The final decision and order will also be published on the Bureau's Web site or as otherwise deemed appropriate by the Bureau.

**§ 1081.406   Reconsideration.**

Within 14 days after service of the Director's final decision and order, any party may file with the Director a petition for reconsideration, briefly and specifically setting forth the relief desired and the grounds in support thereof. Any petition filed under this section must be confined to new questions raised by the final decision or final order and upon which the petitioner had no opportunity to argue, in writing or orally, before the Director. No response to a petition for reconsideration shall be filed unless requested by the Director, who will request such response before granting any petition for reconsideration. The filing of a petition for reconsideration shall not operate to stay the effective date of the final decision or order or to toll the running of any statutory period affecting such decision or order unless specifically so ordered by the Director.

**§ 1081.407   Effective date; stays pending judicial review.**

(a) Other than consent orders, which shall become effective at the time specified therein, an order to cease and desist or for other affirmative action under section 1053(b) of the Dodd-Frank Act becomes effective at the expiration of 30 days after the date of service pursuant to § 1081.113(d)(2), unless the Director agrees to stay the effectiveness of the order pursuant to this section.

(b) Any party subject to a final decision and order, other than a consent order, may apply to the Director for a stay of all or part of that order pending judicial review.

(c) A motion for stay shall state the reasons a stay is warranted and the facts relied upon, and shall include supporting affidavits or other sworn statements, and a copy of the relevant portions of the record. The motion shall address the likelihood of the movant's success on appeal, whether the movant will suffer irreparable harm if a stay is not granted, the degree of injury to other parties if a stay is granted, and why the stay is in the public interest.

(d) A motion for stay shall be filed within 30 days of service of the order on the party. Any party opposing the motion may file a response within five days after receipt of the motion. The movant may file a reply brief, limited to new matters raised by the response, within three days after receipt of the response.

(e) The commencement of proceedings for judicial review of a final decision and order of the Director does not, unless specifically ordered by the Director or a reviewing court, operate as a stay of any order issued by the Director. The Director may, in his or her discretion, and on such terms as he or she finds just, stay the effectiveness of all or any part of an order pending a final decision on a petition for judicial review of that order.

Dated: June 4, 2012.

**Richard Cordray,**
*Director, Bureau of Consumer Financial Protection.*

[FR Doc. 2012–14061 Filed 6–28–12; 8:45 am]

**BILLING CODE 4810–AM–P**

---

## BUREAU OF CONSUMER FINANCIAL PROTECTION

**12 CFR Part 1080**

[Docket No.: CFPB–2011–0007]

RIN 3170–AA03

**Rules Relating to Investigations**

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule.

**SUMMARY:** After considering the public comments on its interim final rule for the Rules Relating to Investigations, the Bureau of Consumer Financial Protection (Bureau), pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act), is making revisions to its procedures for investigations under section 1052 of the Dodd-Frank Act.

**DATES:** The final rule is effective June 29, 2012.

**FOR FURTHER INFORMATION CONTACT:** Peter G. Wilson, Office of the General Counsel, Consumer Financial Protection Bureau, 1700 G Street NW., Washington, DC 20552, (202) 435–7585.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act) was signed into law on July 21, 2010. Title X of the Dodd-Frank Act established the Bureau of Consumer Financial Protection (Bureau) to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws. The Dodd-Frank Act transferred to the Bureau the consumer financial protection functions formerly carried out by the Federal banking agencies, as well as certain authorities formerly carried out by the Department of Housing and Urban Development (HUD) and the Federal Trade Commission (FTC). As required by section 1062 of the Dodd-Frank Act, 12 U.S.C. 5582, the Secretary of the Treasury selected a

designated transfer date and the Federal banking agencies' functions and authorities transferred to the Bureau on July 21, 2011.

The Dodd-Frank Act authorizes the Bureau to conduct investigations to ascertain whether any person is or has been engaged in conduct that, if proved, would constitute a violation of any provision of Federal consumer financial law. Section 1052 of the Dodd-Frank Act sets forth the parameters that govern these investigations. 12 U.S.C. 5562. Section 1052 became effective immediately upon transfer on July 21, 2011 and did not require rules to implement its provisions. On July 28, 2011, the Bureau issued the interim final rule for the Rules Relating to Investigations (Interim Final Rule) to provide parties involved in Bureau investigations with clarification on how to comply with the statutory requirements relating to Bureau investigations.

## II. Summary of the Final Rule

Consistent with section 1052 of the Dodd-Frank Act, the final rule for the Rules Relating to Investigations (Final Rule) describes a number of Bureau policies and procedures that apply in an investigational, nonadjudicative setting. Among other things, the Final Rule sets forth (1) the Bureau's authority to conduct investigations, and (2) the rights of persons from whom the Bureau seeks to compel information in investigations.

Like the Interim Final Rule, the Final Rule is modeled on investigative procedures of other law enforcement agencies. For guidance, the Bureau reviewed the procedures currently used by the FTC, the Securities and Exchange Commission (SEC), and the prudential regulators, as well as the FTC's recently proposed amendments to its nonadjudicative procedures. In light of the similarities between section 1052 of the Dodd-Frank Act and section 20 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. 41 *et seq.,* the Bureau drew most heavily from the FTC's nonadjudicative procedures in constructing the rules.

The Final Rule lays out the Bureau's authority to conduct investigations before instituting judicial or administrative adjudicatory proceedings under Federal consumer financial law. The Final Rule authorizes the Director, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement to issue civil investigative demands (CIDs) for documentary material, tangible things, written reports, answers to questions, or oral testimony. The

demands may be enforced in district court by the Director, the General Counsel, or the Assistant Director of the Office of Enforcement. The Final Rule also details the authority of the Bureau's investigators to conduct investigations and hold investigational hearings pursuant to civil investigative demands for oral testimony.

Furthermore, the Final Rule sets forth the rights of persons from whom the Bureau seeks to compel information in an investigation. Specifically, the Final Rule describes how such persons should be notified of the purpose of the Bureau's investigation. It also details the procedures for filing a petition for an order modifying or setting aside a CID, which the Director is authorized to rule upon. And it describes the process by which persons may obtain copies of or access to documents or testimony they have provided in response to a civil investigative demand. In addition, the Final Rule describes a person's right to counsel at investigational hearings.

## III. Legal Authority

As noted above, section 1052 of the Dodd-Frank Act outlines how the Bureau will conduct investigations and describes the rights of persons from whom the Bureau seeks information in investigations. This section became effective immediately upon the designated transfer date, July 21, 2011, without any requirement that the Bureau first issue procedural rules. Nevertheless, the Bureau believes that the legislative purpose of section 1052 will be furthered by the issuance of rules that specify the manner in which persons can comply with its provisions.

Section 1022 of the Dodd-Frank Act authorizes the Director to prescribe rules as may be necessary or appropriate for the Bureau to administer and carry out the purposes and objectives of Federal consumer financial laws and to prevent evasion of those laws. 12 U.S.C. 5512. The Bureau believes that the Final Rule will effectuate the purpose of section 1052 and facilitate compliance with Bureau investigations.

## IV. Overview of Public Comments on the Interim Final Rule

After publication of the Interim Final Rule on July 28, 2011, the Bureau accepted public comments until September 26, 2011. During the comment period, the Bureau received seven comments. Two of the comments were submitted by individual consumers. Four trade associations and a mortgage company also submitted comments. The trade associations represent credit unions, banks, consumer credit companies, members of

the real estate finance industry, and other financial institutions.

The commenters generally support the Interim Final Rule. Most sections of the Interim Final Rule received no comment and are being finalized without change. The comments did, however, contain questions and recommendations for the Bureau.

Several of the commenters expressed concern that the Interim Final Rule appeared to provide staff-level Bureau employees with unchecked authority to initiate investigations and issue CIDs, or that the Interim Final Rule otherwise did not provide sufficient oversight for particular actions.

A number of commenters expressed concern about sections of the Interim Final Rule that relate to CIDs. One trade association recommended that a statement of "the purpose and scope" of a Bureau investigation—in addition to a notification of the nature of the conduct constituting the alleged violation under investigation and the applicable provisions of law—be included in CIDs. A commenter suggested that the Bureau require a conference between CID recipients and the Assistant Director of the Office of Enforcement to negotiate the terms of compliance with the demand. Three of the trade associations noted concern with the statement that extensions of time are disfavored for petitions to modify or set aside CIDs. Two commenters questioned who would rule on such petitions without a confirmed Director. One trade association commented that witnesses should be permitted to object to questions demanding information outside of the scope of the investigation during an investigational hearing pursuant to a CID for oral testimony.

A number of commenters expressed concern about maintaining the confidentiality of demand material, sharing information with other State and Federal agencies, and the duties of the custodians of those materials. For example, one trade association and the mortgage company recommended that investigations should remain confidential in all circumstances. Another trade association asserted that the Bureau is not permitted to engage in joint investigations with State attorneys general.

The Bureau reviewed all of the comments on its Interim Final Rule thoroughly and addresses the significant issues they raise herein. Although most sections of the Interim Final Rule received no comment and are being finalized without change, the Bureau has made several changes to the Interim Final Rule based on the comments it received. The comments and these

changes are discussed in more detail in parts V and VI of the **SUPPLEMENTARY INFORMATION.**

## V. General Comments

Some comments on the Interim Final Rule were not directed at a specific section but rather concerned issues of general applicability. The Bureau addresses those comments in this section and addresses comments related to specific sections of the Interim Final Rule in part VI.

One commenter asked the Bureau to specify who would rule on petitions to set aside or modify CIDs while the Bureau lacked a Director. This commenter also asked who would review requests to the Attorney General under § 1080.12 for authority to immunize witnesses and to order them to testify or provide other information. The President appointed a Director of the Bureau on January 4, 2012. Therefore, both questions posed by this commenter are moot. The Director or any official to whom the Director has delegated his authority pursuant to 12 U.S.C. 5492(b) will rule on petitions to set aside or modify CIDs. Furthermore, the Bureau has revised § 1080.12 to clarify that only the Director has the authority to request approval from the Attorney General for the issuance of an order immunizing witnesses.

A commenter asserted that section 1052(c)(1) of the Dodd-Frank Act prohibits the Bureau from issuing CIDs after the institution of any proceedings under Federal consumer financial laws, including proceedings initiated by a State or a private party. The commenter argued that a CID should be accompanied by a certification that the demand will have no bearing on any ongoing proceeding. Section 1052(c)(1) provides, in relevant part, that "the Bureau may, before the institution of any proceedings under the Federal consumer financial law, issue in writing, and cause to be served upon such person, a civil investigative demand." The language "before the institution of any proceeding under Federal consumer financial law" refers to the institution of proceedings by the Bureau. It does not limit the Bureau's authority to issue CIDs based upon the commencement of a proceeding by other parties.

Another commenter requested that the Bureau exempt all credit unions from Bureau investigations. The Bureau believes that granting an exemption from the Bureau's enforcement authority through the Final Rule would be inappropriate and that there is an insufficient record to support such an exemption.

A commenter recommended that covered persons be allowed to recover attorneys' fees and costs incurred by defending against an investigation that is shown to be without merit. The Dodd-Frank Act does not provide the right to recover fees and costs by defending against an investigation. Further, as explained below, the Bureau believes that the procedures for petitioning to modify or set aside a CID set forth in § 1080.6(d) of the Interim Final Rule (now 1080.6(e) of the Final Rule) provide sufficient protections to a recipient of a demand it believes lacks merit.

## VI. Section-by-Section Summary

*Section 1080.1  Scope*

This section describes the scope of the Interim Final Rule. It makes clear that these rules only apply to investigations under section 1052 of the Dodd-Frank Act. The Bureau received no comment on § 1080.1 of the Interim Final Rule and is adopting it as the Final Rule without change.

*Section 1080.2  Definitions*

This section of the Interim Final Rule defines several terms used throughout the rules. Many of these definitions also may be found in section 1051 of the Dodd-Frank Act.

A commenter questioned the breadth of the definition of the term "Assistant Director of the Division of Enforcement." The commenter argued that because that term was defined to include "any Bureau employee to whom the Assistant Director of the Division of Enforcement has delegated authority to act under this part," the Interim Final Rule could give Bureau employees inappropriately broad authority to take certain actions, such as issuing CIDs.

The Bureau has revised the Final Rule in response to these comments. The Final Rule identifies those with authority to take particular actions under each section of the Final Rule. Sections 1080.4 (initiating and conducting investigations) and 1080.6 (civil investigative demands) of the Final Rule clarify that the authority to initiate investigations and issue CIDs cannot be delegated by the identified officials. The Final Rule also changes the defined term "Division of Enforcement" to "Office of Enforcement" to reflect the Bureau's current organizational structure.

*Section 1080.3  Policy as to Private Controversies*

This section of the Interim Final Rule states the Bureau's policy of pursuing investigations that are in the public

interest. Section 1080.3 is consistent with the Bureau's mission to protect consumers by investigating potential violations of Federal consumer financial law. The Bureau received no comments on § 1080.3 of the Interim Final Rule and is adopting it as the Final Rule without change.

*Section 1080.4  Initiating and Conducting Investigations*

This section of the Interim Final Rule explains that Bureau investigators are authorized to conduct investigations pursuant to section 1052 of the Dodd-Frank Act.

A commenter observed that this section of the Interim Final Rule did not explicitly provide a procedure for senior agency officials to authorize the opening of an investigation. The commenter argued that only senior agency officials should decide whether to initiate investigations. The commenter questioned whether staff-level employees could open investigations and issue CIDs without sufficient supervision, and noted that the FTC's analogous rule specifically lists the senior officials to whom the Commission has delegated, without power of redelegation, the authority to initiate investigations.

A commenter also expressed concern that the FTC's analogous rule explicitly provides that FTC investigators must comply with the laws of the United States and FTC regulations. According to the commenter, such language is necessary to ensure that the Bureau complies with the Right to Financial Privacy Act (RFPA) to the extent that statute applies to the Bureau. The commenter also believes that this language is needed to guard against investigations undertaken for what the commenter characterized as the impermissible purpose of aiding State attorneys general or State regulators. The commenter suggested that the Bureau add a statement to this section of the Interim Final Rule similar to the FTC's rule requiring compliance with Federal law and agency regulations.

The Final Rule clarifies that only the Assistant Director or any Deputy Assistant Director of the Office of Enforcement has the authority to initiate investigations. The Bureau has significant discretion to determine whether and when to open an investigation, and the public benefits from a process whereby the Bureau can open and close investigations efficiently. But the Bureau did not intend its rules to be interpreted so broadly as to suggest that any staff-level employee could unilaterally open an investigation or issue a CID. The Final

Rule also provides that Bureau investigators will perform their duties in accordance with Federal law and Bureau regulations.

### Section 1080.5   Notification of Purpose

This section of the Interim Final Rule specifies that a person compelled to provide information to the Bureau or to testify in an investigational hearing must be advised of the nature of the conduct constituting the alleged violation under investigation and the applicable provisions of law. This section of the Interim Final Rule implements the requirements for CIDs described in section 1052(c)(2) of the Dodd-Frank Act.

Commenters noted that although the Dodd-Frank Act and the FTC Act both require CIDs to state "the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation," the two agencies' implementing regulations on this topic differ. Both agencies' regulations require a statement of the nature of the conduct at issue and the relevant provisions of law, but the FTC rule also requires that the recipient of the CID be advised of "the purpose and scope" of the investigation. Commenters argued that the Bureau should add this phrase to its rule because excluding it would lead to requests for materials outside the scope of an investigation. One commenter argued that only senior agency officials should authorize investigations to ensure that CIDs are relevant to the purpose and scope of the Bureau's investigations.

The language in § 1080.5 of the Interim Final Rule mirrors the language of the Dodd-Frank Act, which provides that "[e]ach civil investigative demand shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." The Bureau believes that the information covered by this statutory language provides sufficient notice to recipients of CIDs. As discussed above, § 1080.4 (initiating and conducting investigations) of the Final Rule limits the authority to open investigations to the Assistant Director or any Deputy Assistant Director of the Office of Enforcement. Similarly, § 1080.6 of the Final Rule (civil investigative demands) limits the authority to issue CIDs to the Director of the Bureau, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement. Thus, one of these identified officials will review and approve the initiation of all investigations and the issuance of all

CIDs. In addition, to the extent recipients of CIDs consider the demands to be for an unauthorized purpose or outside the scope of the investigation, they will have an opportunity to negotiate the terms of compliance pursuant to § 1080.6(c) of the Interim Final Rule (now § 1080.6(d) of the Final Rule) or to petition to set aside or modify the demand pursuant to § 1080.6(d) of the Interim Final Rule (now § 1080.6(e) of the Final Rule).

The Bureau therefore adopts this section of the Interim Final Rule as the Final Rule without change.

### Section 1080.6   Civil Investigative Demands

This section of the Interim Final Rule lays out the Bureau's procedures for issuing CIDs. It authorizes the Assistant Director of the Office of Enforcement to issue CIDs for documentary material, tangible things, written reports, answers to questions, and oral testimony. This section of the Interim Final Rule details the information that must be included in CIDs and the requirement that responses be made under a sworn certificate. Section 1080.6 of the Interim Final Rule also authorizes the Assistant Director of the Office of Enforcement to negotiate and approve the terms of compliance with CIDs and grant extensions for good cause. Finally, this section of the Interim Final Rule describes the procedures for seeking an order to modify or set aside a CID, which the Director is authorized to rule upon.

One commenter argued that § 1080.6(a) permits almost any Bureau employee to issue CIDs without sufficient supervision. The commenter stated that this lack of oversight is problematic and does not reflect Congress' intent when it enacted the Act.

Section 1080.6(a) of the Final Rule limits the authority to issue CIDs to the Director, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement. This change to the Final Rule balances the efficiency of the Bureau's investigative process with appropriate supervision and oversight.

A commenter suggested that the Bureau require a conference between the CID recipient and the Assistant Director of the Office of Enforcement within ten days of service of the CID to negotiate and approve the terms of compliance. The commenter envisioned a conference analogous to a discovery planning conference under the Federal Rules of Civil Procedure, during which the parties could discuss requests for information, appropriate limitations on

the scope of requests, issues related to electronically stored information (ESI), issues related to privilege and confidential information, and a reasonable time for compliance. The commenter stated that this type of conference would better ensure prompt and efficient production of material and information related to the investigation.

The Bureau agrees that a conference between the parties within ten calendar days of serving a CID is likely to improve the efficiency of investigations, and § 1080.6(c) of the Final Rule provides for such a conference. The Final Rule does not, however, adopt the suggestion that the Assistant Director of the Office of Enforcement preside over all such conferences.

Several commenters also noted concern with the statement in § 1080.6(d) of the Interim Final Rule disfavoring extensions of time for petitioning for an order modifying or setting aside CIDs. One commenter argued that the 20-day period to file petitions, for which extensions of time are disfavored, is inconsistent with the "reasonable" period of time for compliance with the CID set forth in § 1080.6(a). The commenter also argued that this timeframe leaves a short period for the CID recipient to decide which documents are privileged or otherwise protected and to file a petition articulating privilege and scope objections. Another commenter noted that the analogous FTC rules do not include a provision disfavoring extensions for petitions to modify or set aside a CID. These commenters recommended that the Bureau delete the sentence related to disfavoring extensions. One commenter recommended that the rules be corrected to provide an independent review if a covered person believes a CID is without merit.

Like the Interim Final Rule, the Final Rule includes a provision disfavoring extensions of time for petitions to modify or set aside a CID. The Bureau believes its policy of disfavoring extensions is appropriate in light of its significant interest in promoting an efficient process for seeking materials through CIDs. By disfavoring extensions, the Bureau means to prompt recipients to decide within 20 days whether they intend to comply with the CID. The Final Rule also clarifies that this 20-day period should be computed with calendar days.

The Bureau notes that § 1080.6(d) of the Interim Final Rule (now § 1080.6(e) of the Final Rule) only provides the due date for a petition for an order modifying or setting aside a CID. It does not require recipients to comply fully

with CIDs within 20 days. In addition, the Final Rule provides several options to recipients of CIDs that need additional time to respond. For example, the recipient may negotiate for a reasonable extension of time for compliance or a rolling document production schedule pursuant to § 1080.6(c) of the Interim Final Rule (now § 1080.6(d) of the Final Rule).

Section 1080.6(e) of the Final Rule clarifies that recipients of CIDs should not assert claims of privilege through a petition for an order modifying or setting aside a CID. Instead, when privilege is the only basis for withholding particular materials, they should utilize the procedures set forth in § 1080.8 (withholding requested material) of the Final Rule. Section 1080.6(e) of the Final Rule also lays out the authority of Bureau investigators to provide to the Director a reply to a petition seeking an order modifying or setting aside a CID. Specifically, the Final Rule states that Bureau investigators may provide the Director with a statement setting forth any factual and legal responses to a petition. The Bureau will not make these statements or any other internal deliberations part of the Bureau's public records. Section 1080.6(g) of the Final Rule clarifies that the Bureau, however, will make publicly available both the petition and the Director's order in response. Section 1080.6(g) of the Final Rule also clarifies that if a CID recipient wants to prevent the Director from making the petition public, any showing of good cause must be made no later than the time the petition is filed. The Final Rule also adds a provision clarifying how the Bureau will serve the petitioner with the Director's order.

Finally, the Bureau believes the procedures for petitions to modify or set aside a CID set forth in the Final Rule adequately protect a covered person who believes a CID is without merit, and that an additional independent review is unnecessary.

### Section 1080.7  Investigational Hearings

This section of the Interim Final Rule describes the procedures for investigational hearings initiated pursuant to a CID for oral testimony. It also lays out the roles and responsibilities of the Bureau investigator conducting the investigational hearing, which include excluding unauthorized persons from the hearing room and ensuring that the investigational hearing is transcribed, the witness is duly sworn, the transcript is a true record of the testimony, and the

transcript is provided to the designated custodian.

A commenter argued that the Bureau is not authorized to conduct joint investigations with State attorneys general under the Dodd-Frank Act and, correspondingly, State attorneys general cannot attend an investigational hearing as a representative of an agency with whom the Bureau is conducting a joint investigation. The commenter argued that Congress distinguished between State attorneys general and State regulatory agencies in section 1042 of the Dodd-Frank Act and that State attorneys general are therefore not "agencies" with whom the Bureau can partner. The commenter also asserted that the Bureau cannot share a copy of the transcript of an investigational hearing with another agency without the consent of the witness.

Another commenter argued that representatives of agencies with which the Bureau is conducting a joint investigation may be present at an investigational hearing only with the witness's consent. This commenter stated that the Bureau should recognize in the rules that a witness who does not consent to the presence of a representative of another agency at an investigational hearing should not be presumed guilty.

The Dodd-Frank Act states that the Bureau "may engage in joint investigations and requests for information, as authorized under this title." This statutory language permits the Bureau to engage in joint investigations with State or Federal law enforcement agencies, including State attorneys general, with jurisdiction that overlaps with the Bureau's. The Bureau's disclosure rules also permit the Bureau to share certain confidential information, including investigational hearing transcripts, with Federal or State agencies to the extent the disclosure is relevant to the exercise of an agency's statutory or regulatory authority. *See* 12 CFR 1070.43(b). In addition, neither the Dodd-Frank Act nor the rules require the consent of the witness to permit a representative of an agency with which the Bureau is conducting a joint investigation to be present at the hearing. Consent is required only when people other than those listed in the rule are included.

Thus, the Bureau adopts § 1080.7 of the Interim Final Rule as the Final Rule without change.

### Section 1080.8  Withholding Requested Material

This section of the Interim Final Rule describes the procedures that apply when persons withhold material

responsive to a CID. It requires the recipient of the CID to assert a privilege by the production date and, if so directed in the CID, also to submit a detailed schedule of the items withheld. Section 1080.8 also sets forth the procedures for handling the disclosure of privileged or protected information or communications.

The Bureau received no comment on § 1080.8 of the Interim Final Rule and is adopting it as the Final Rule without substantive change.

### Section 1080.9  Rights of Witnesses in Investigations

This section of the Interim Final Rule describes the rights of persons compelled to submit information or provide testimony in an investigation. It details the procedures for obtaining a copy of submitted documents or a copy of or access to a transcript of the person's testimony. This section of the Interim Final Rule also describes a witness's right to make changes to his or her transcript and the rules for signing the transcript.

Section 1080.9 of the Interim Final Rule lays out a person's right to counsel at an investigational hearing and describes his or her counsel's right to advise the witness as to any question posed for which an objection may properly be made. It also describes the witness's or counsel's rights to object to questions or requests that the witness is privileged to refuse to answer. This section of the Interim Final Rule states that counsel for the witness may not otherwise object to questions or interrupt the examination to make statements on the record but may request that the witness have an opportunity to clarify any of his or her answers. Finally, this section of the Interim Final Rule authorizes the Bureau investigator to take all necessary action during the course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory, obstructionist, or contumacious language.

A commenter noted that under the Interim Final Rule witnesses could not object during an investigational hearing on the ground that a question was outside the scope of the investigation. The commenter argued that a covered person's inability to raise such objections might allow "a fishing expedition." The commenter recommended amending § 1080.9(b) to allow objections based on scope.

Section 1052(c)(13)(D)(iii) of the Dodd-Frank Act states, in relevant part:

[a]n objection may properly be made, received, and entered upon the record when it is claimed that such person is entitled to

refuse to answer the question on grounds of any constitutional or other legal right or privilege, including the privilege against self-incrimination, but the person shall not otherwise object to or refuse to answer any question, and such person or attorney shall not otherwise interrupt the oral examination.

Thus, to the extent the scope objection was grounded in a witness's constitutional or other legal right, it would be a proper objection.

The Final Rule clarifies that counsel may confer with a witness while a question is pending or instruct a witness not to answer a question only if an objection based on privilege or work product may properly be made. The Final Rule also describes counsel's limited ability to make additional objections based on other constitutional or legal rights. The Final Rule provides that if an attorney has refused to comply with his or her obligations in the rules of this part, or has allegedly engaged in disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language during an investigational hearing, the Bureau may take further action, including action to suspend or disbar the attorney from further participation in the investigation or further practice before the Bureau pursuant to 12 CFR 1081.107(c). The Final Rule also includes other nonsubstantive changes, including clarifying that the 30-day period that the witness has to sign and submit his or her transcript should be computed using calendar days.

*Section 1080.10    Noncompliance With Civil Investigative Demands*

This section of the Interim Final Rule authorizes the Director, the Assistant Director of the Office of Enforcement, and the General Counsel to initiate an action to enforce a CID in connection with the failure or refusal of a person to comply with, or to obey, a CID. In addition, they are authorized to seek civil contempt or other appropriate relief in cases where a court order enforcing a CID has been violated.

The Bureau received no comment on § 1080.10 of the Interim Final Rule and is adopting it as the Final Rule without substantive change.

*Section 1080.11    Disposition*

This section of the Interim Final Rule explains that an enforcement action may be instituted in Federal or State court or through administrative proceedings when warranted by the facts disclosed by an investigation. It further provides that the Bureau may refer investigations to appropriate Federal, State, or foreign government agencies as appropriate. This section of the Interim Final Rule

also authorizes the Assistant Director of the Office of Enforcement to close the investigation when the facts of an investigation indicate an enforcement action is not necessary or warranted in the public interest.

One commenter indicated that the Bureau's authority to refer investigations to other law enforcement agencies should be limited to circumstances when it is expressly authorized to do so by the Dodd-Frank Act, an enumerated consumer financial law, or other Federal law, because of potential risks to the confidentiality of the investigatory files.

The Bureau's ability to refer matters to appropriate law enforcement agencies is inherent in the Bureau's authority and is a corollary to the Bureau's statutorily recognized ability to conduct joint investigations. The documentary materials and tangible things obtained by the Bureau pursuant to a CID are subject to the requirements and procedures relating to disclosure of records and information in part 1070 of this title. These procedures for sharing information with law enforcement agencies provide significant and sufficient protections for these materials.

The Bureau has amended § 1080.11 to clarify that the Assistant Director and any Deputy Assistant Director of the Office of Enforcement are authorized to close investigations.

The Bureau adopts § 1080.11 of the Interim Final Rule with the changes discussed above.

*Section 1080.12    Orders Requiring Witnesses To Testify or Provide Other Information and Granting Immunity*

This section of the Interim Final Rule authorizes the Assistant Director of the Office of Enforcement to request approval from the Attorney General for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004. The Interim Final Rule also sets forth the Bureau's right to review the exercise of these functions and states that the Bureau will entertain an appeal from an order requiring a witness to testify or provide other information only upon a showing that a substantial question is involved, the determination of which is essential to serve the interests of justice. Finally, this section of the Interim Final Rule describes the applicable rules and time limits for such appeals.

A commenter questioned whether this section of the Interim Final Rule would permit any Bureau employee to request that the Attorney General approve the issuance of an order granting immunity

under 18 U.S.C. 6004 and requiring a witness to testify or provide information. The commenter noted that the Dodd-Frank Act authorizes the Bureau, with the Attorney General's permission, to compel a witness to testify under 18 U.S.C. 6004 if the witness invokes his or her privilege against self-incrimination. The commenter argued that this section should delegate the authority to seek permission to compel testimony to a specific individual to provide accountability and ensure that information is not disclosed to the Attorney General in a manner that violates the Right to Financial Privacy Act. The commenter noted that the FTC's analogous rule specifically lists the senior agency officials who are authorized to make such requests to the Attorney General, and identifies a liaison officer through whom such requests must be made. The commenter also suggested that § 1080.12(b) of the Interim Final Rule, which provides that the Assistant Director's exercise of this authority is subject to review by "the Bureau," specify who will conduct this review.

The Final Rule provides that only the Director of the Bureau has the authority to request approval from the Attorney General for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004. This change addresses the concern that requests for witness immunity would be made without oversight. Limiting this authority to the Director provides sufficient accountability.

*Section 1080.13    Custodians*

This section of the Interim Final Rule describes the procedures for designating a custodian and deputy custodian for material produced pursuant to a CID in an investigation. It also states that these materials are for the official use of the Bureau, but, upon notice to the custodian, must be made available for examination during regular office hours by the person who produced them.

A commenter suggested that the Bureau should detail the particular duties of custodians designated under this section and that, without an enumerated list of duties, the custodian would not have any responsibilities regarding CID materials. The commenter noted that the FTC Act requires the custodian to take specific actions, while the Dodd-Frank Act does not. The commenter suggested specifying a series of custodial duties, including (1) taking and maintaining custody of all materials submitted pursuant to CIDs or subpoenas that the Bureau issues,

including transcripts of oral testimony taken by the Bureau; (2) maintaining confidentiality of those materials as required by applicable law; (3) providing the materials to either House of Congress upon request, after ten days notice to the party that owns or submitted the materials; (4) producing any materials as required by a court of competent jurisdiction; and (5) complying at all times with the Trade Secrets Act.

Section 1052 of the Dodd-Frank Act sets forth the duties of the Bureau's custodian. Sections 1052(c)(3) through (c)(6) of the Dodd-Frank Act give the custodian responsibility for receiving documentary material, tangible things, written reports, answers to questions, and transcripts of oral testimony given by any person in compliance with any CID. Section 1052(d) of the Dodd-Frank Act, as well as the Bureau's Rules for Disclosure of Records and Information in part 1070 of this title, outline the requirements for the confidential treatment of demand material. Section 1052(g) addresses custodial control and provides that a person may file, in the district court of the United States for the judicial district within which the office of the custodian is situated, a petition for an order of such court requiring the performance by the custodian of any duty imposed upon him by section 1052 of the Dodd-Frank Act or by Bureau rule. These duties and obligations do not require additional clarification by rule.

The Final Rule clarifies that the custodian has the powers and duties of both section 1052 of the Dodd-Frank Act and 12 CFR 1070.3.

The Bureau adopts § 1080.13 of the Interim Final Rule with the changes discussed above.

*Section 1080.14 Confidential Treatment of Demand Material and Non-Public Nature of Investigations*

Section 1080.14 of the Interim Final Rule explains that documentary materials, written reports, answers to questions, tangible things, or transcripts of oral testimony received by the Bureau in any form or format pursuant to a CID are subject to the requirements and procedures relating to disclosure of records and information in part 1070 of this title. This section of the Interim Final Rule also states that investigations generally are non-public. A Bureau investigator may disclose the existence of an investigation to the extent necessary to advance the investigation.

A commenter recommended that the Bureau revise this section to mandate that Bureau investigations remain confidential. The commenter noted the

potential reputation risk to an entity if an investigation is disclosed to the public. In addition, the commenter argued that failing to conduct investigations confidentially will increase litigation risk. One commenter recommended that the Bureau issue a public absolution of a company if the Bureau does not maintain the confidentiality of an investigation.

Section 1080.14 of the Interim Final Rule provides that investigations generally will not be disclosed to the public, but permits Bureau investigators to disclose the existence of an investigation when necessary to advance the investigation. The Interim Final Rule does not contemplate publicizing an investigation, but rather disclosing the existence of the investigation to, for example, a potential witness or third party with potentially relevant information when doing so is necessary to advance the investigation. This limited exception sufficiently balances the concerns expressed by the commenter with the Bureau's need to obtain information efficiently.

Thus, the Bureau adopts § 1080.14 of the Interim Final Rule as the Final Rule without change.

## VII. Section 1022(b)(2) Provisions

In developing the Final Rule, the Bureau has considered the potential benefits, costs, and impacts, and has consulted or offered to consult with the prudential regulators, HUD, the SEC, the Department of Justice, and the FTC, including with regard to consistency with any prudential, market, or systemic objectives administered by such agencies.[1]

The Final Rule neither imposes any obligations on consumers nor is expected to have any appreciable impact on their access to consumer financial products or services. Rather, the Final Rule provides a clear, efficient mechanism for investigating compliance with the Federal consumer financial laws, which benefits consumers by creating a systematic process to protect them from unlawful behavior.

[1] Section 1022(b)(2)(A) of the Dodd-Frank Act addresses the consideration of the potential benefits and costs of regulation to consumers and covered persons, including the potential reduction of access by consumers to consumer financial products or services; the impact on depository institutions and credit unions with $10 billion or less in total assets as described in section 1026 of the Dodd-Frank Act; and the impact on consumers in rural areas. Section 1022(b)(2)(B) addresses consultation between the Bureau and other Federal agencies during the rulemaking process. The manner and extent to which these provisions apply to procedural rules and benefits, costs and impacts that are compelled by statutory changes rather than discretionary Bureau action is unclear. Nevertheless, to inform this rulemaking more fully, the Bureau performed the described analyses and consultations.

The Final Rule imposes certain obligations on covered persons who receive CIDs in Bureau investigations. Specifically, as described above, the Final Rule sets forth the process for complying with or objecting to CIDs for documentary material, tangible things, written reports or answers to questions, and oral testimony. Most obligations in the Final Rule stem from express language in the Dodd-Frank Act and do not impose additional burdens on covered persons.

To the extent that the Final Rule includes provisions not expressly required by statute, these provisions benefit covered persons by providing clarity and certainty. In addition, the Final Rule vests the Bureau with discretion to modify CIDs or extend the time for compliance for good cause. This flexibility benefits covered persons by enabling the Bureau to assess the cost of compliance with a civil investigative demand in a particular circumstance and take appropriate steps to mitigate any unreasonable compliance burden.

Moreover, because the Final Rule is largely based on section 20 of the FTC Act and its corresponding regulations, it should present an existing, stable model of investigatory procedures to covered persons. This likely familiarity to covered persons should further reduce the compliance costs for covered persons.

The Final Rule provides that requests for extensions of time to file petitions to modify or set aside CIDs are disfavored. This may impose a burden on covered entities in some cases, but it may also lead to a more expeditious resolution of matters, reducing uncertainty. Furthermore, the Final Rule has no unique impact on insured depository institutions or insured credit unions with less than $10 billion in assets as described in section 1026(a) of the Dodd-Frank Act. Nor does the Final Rule have a unique impact on rural consumers.

A commenter suggested that the Bureau conduct a nonpublic study of the impact of complying with a CID on the entities who have been subjected to them by other agencies, with specific focus on those that were found not to have violated the law. As the commenter implicitly recognizes, such data does not currently exist and thus was not reasonably available to the Bureau in finalizing the Interim Final Rule. Moreover, as explained above, most of the costs associated with complying with a CID result from the Dodd-Frank Act, which authorizes the Bureau to issue such demands.

A commenter asserted that disfavoring extensions of petitions to

modify or set aside CIDs will require the recipient to conduct a full review of the demanded material within the normal 20-day period in order to comply with the deadline for filing a petition. Under the Final Rule, recipients of a CID are not required to comply fully within twenty days; rather, they are required simply to decide whether they will comply with the demand at all. The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement have the discretion to negotiate and approve the terms of satisfactory compliance with CIDs and, for good cause shown, may extend the time prescribed for compliance. Thus, the Final Rule provides reasonable steps to mitigate compliance burden while simultaneously protecting the Bureau's law enforcement interests.

Another commenter stated that the four interim final rules that the Bureau promulgated together on July 28, 2011 failed to satisfy the rulemaking requirements under section 1022 of the Dodd-Frank Act. Specifically, the commenter stated that "the CFPB's analysis of the costs and benefits of its rules does not recognize the significant costs the CFPB imposes on covered persons." The Bureau believes that it appropriately considered the benefits, costs, and impacts of the Interim Final Rule pursuant to section 1022. Notably, the commenter did not identify any specific costs to covered persons that are not discussed in Part C of the SUPPLEMENTARY INFORMATION to the Interim Final Rule.

## VIII. Procedural Requirements

As noted in publishing the Interim Final Rule, under the Administrative Procedure Act, 5 U.S.C. 553(b), notice and comment is not required for rules of agency organization, procedure, or practice. As discussed in the preamble to the Interim Final Rule, the Bureau confirms its finding that this is a procedural rule for which notice and comment is not required. In addition, because the Final Rule relates solely to agency procedure and practice, it is not subject to the 30-day delayed effective date for substantive rules under section 553(d) of the Administrative Procedure Act, 5 U.S.C. 551 *et seq.* Because no notice of proposed rulemaking is required, the requirements of the Regulatory Flexibility Act, 5 U.S.C. 601(2) do not apply. Finally, the Bureau has determined that this Final Rule does not impose any new recordkeeping, reporting, or disclosure requirements on covered entities or members of the public that would be collections of

information requiring approval under 44 U.S.C. 3501. *et seq.*

## List of Subjects in 12 CFR Part 1080

Administrative practice and procedure, Banking, Banks, Consumer protection, Credit, Credit unions, Investigations, Law enforcement, National banks, Savings associations, Trade practices.

For the reasons set forth in the preamble, the Bureau of Consumer Financial Protection revises part 1080 to Chapter X in Title 12 of the Code of Federal Regulations to read as follows:

## PART 1080—RULES RELATING TO INVESTIGATIONS

Sec.
1080.1  Scope.
1080.2  Definitions.
1080.3  Policy as to private controversies.
1080.4  Initiating and conducting investigations.
1080.5  Notification of purpose.
1080.6  Civil investigative demands.
1080.7  Investigational hearings.
1080.8  Withholding requested material.
1080.9  Rights of witnesses in investigations.
1080.10  Noncompliance with civil investigative demands.
1080.11  Disposition.
1080.12  Orders requiring witnesses to testify or provide other information and granting immunity.
1080.13  Custodians.
1080.14  Confidential treatment of demand material and non-public nature of investigations.

**Authority:** Pub. L. 111–203, Title X, 12 U.S.C. 5481 *et seq.*

### § 1080.1  Scope.

The rules of this part apply to Bureau investigations conducted pursuant to section 1052 of the Dodd-Frank Act, 12 U.S.C. 5562.

### § 1080.2  Definitions.

For the purposes of this part, unless explicitly stated to the contrary:

*Bureau* means the Bureau of Consumer Financial Protection.

*Bureau investigation* means any inquiry conducted by a Bureau investigator for the purpose of ascertaining whether any person is or has been engaged in any conduct that is a violation.

*Bureau investigator* means any attorney or investigator employed by the Bureau who is charged with the duty of enforcing or carrying into effect any Federal consumer financial law.

*Custodian* means the custodian or any deputy custodian designated by the Bureau for the purpose of maintaining custody of information produced pursuant to this part.

*Director* means the Director of the Bureau or a person authorized to

perform the functions of the Director in accordance with the law.

*Documentary material* means the original or any copy of any book, document, record, report, memorandum, paper, communication, tabulation, chart, log, electronic file, or other data or data compilation stored in any medium, including electronically stored information.

*Dodd-Frank Act* means the Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010, as amended, Public Law 111–203 (July 21, 2010), Title X, codified at 12 U.S.C. 5481 *et seq.*

*Electronically stored information (ESI)* means any information stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

*Office of Enforcement* means the office of the Bureau responsible for enforcement of Federal consumer financial law.

*Person* means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

*Violation* means any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law.

### § 1080.3  Policy as to private controversies.

The Bureau shall act only in the public interest and will not initiate an investigation or take other enforcement action when the alleged violation is merely a matter of private controversy and does not tend to affect adversely the public interest.

### § 1080.4  Initiating and conducting investigations.

The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement have the nondelegable authority to initiate investigations. Bureau investigations are conducted by Bureau investigators designated and duly authorized under section 1052 of the Dodd-Frank Act, 12 U.S.C. 5562, to conduct such investigations. Bureau investigators are authorized to exercise and perform their duties in accordance with the laws of the United States and the regulations of the Bureau.

### § 1080.5  Notification of purpose.

Any person compelled to furnish documentary material, tangible things, written reports or answers to questions, oral testimony, or any combination of

such material, answers, or testimony to the Bureau shall be advised of the nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation.

### § 1080.6   Civil investigative demands.

(a) *In general.* In accordance with section 1052(c) of the Act, the Director of the Bureau, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement, have the nondelegable authority to issue a civil investigative demand in any Bureau investigation directing the person named therein to produce documentary material for inspection and copying or reproduction in the form or medium requested by the Bureau; to submit tangible things; to provide a written report or answers to questions; to appear before a designated representative at a designated time and place to testify about documentary material, tangible things, or other information; and to furnish any combination of such material, things, answers, or testimony.

(1) *Documentary material.* (i) Civil investigative demands for the production of documentary material shall describe each class of material to be produced with such definiteness and certainty as to permit such material to be fairly identified, prescribe a return date or dates that will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying or reproduction, and identify the custodian to whom such material shall be made available. Documentary material for which a civil investigative demand has been issued shall be made available as prescribed in the civil investigative demand.

(ii) Production of documentary material in response to a civil investigative demand shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person having knowledge of the facts and circumstances relating to such production, to the effect that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available to the custodian.

(2) *Tangible things.* (i) Civil investigative demands for tangible things shall describe each class of tangible things to be produced with such definiteness and certainty as to permit such things to be fairly identified, prescribe a return date or dates which will provide a reasonable period of time within which the things so demanded may be assembled and submitted, and identify the custodian to whom such things shall be submitted.

(ii) Submissions of tangible things in response to a civil investigative demand shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person having knowledge of the facts and circumstances relating to such production, to the effect that all of the tangible things required by the demand and in the possession, custody, or control of the person to whom the demand is directed have been submitted to the custodian.

(3) *Written reports or answers to questions.* (i) Civil investigative demands for written reports or answers to questions shall propound with definiteness and certainty the reports to be produced or the questions to be answered, prescribe a date or dates at which time written reports or answers to questions shall be submitted, and identify the custodian to whom such reports or answers shall be submitted.

(ii) Each reporting requirement or question in a civil investigative demand shall be answered separately and fully in writing under oath. Responses to a civil investigative demand for a written report or answers to questions shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person responsible for answering each reporting requirement or question, to the effect that all of the information required by the demand and in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to the custodian.

(4) *Oral testimony.* (i) Civil investigative demands for the giving of oral testimony shall prescribe a date, time, and place at which oral testimony shall be commenced, and identify a Bureau investigator who shall conduct the investigation and the custodian to whom the transcript of such investigation shall be submitted. Oral testimony in response to a civil investigative demand shall be taken in accordance with the procedures for investigational hearings prescribed by §§ 1080.7 and 1080.9 of this part.

(ii) Where a civil investigative demand requires oral testimony from an entity, the civil investigative demand shall describe with reasonable particularity the matters for examination and the entity must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. Unless a single individual is designated by the entity, the entity must designate the matters on which each designee will testify. The individuals designated must testify about information known or reasonably available to the entity and their testimony shall be binding on the entity.

(b) *Manner and form of production of ESI.* When a civil investigative demand requires the production of ESI, it shall be produced in accordance with the instructions provided by the Bureau regarding the manner and form of production. Absent any instructions as to the form for producing ESI, ESI must be produced in the form in which it is ordinarily maintained or in a reasonably usable form.

(c) *Meet and confer.* The recipient of a civil investigative demand shall meet and confer with a Bureau investigator within 10 calendar days after receipt of the demand or before the deadline for filing a petition to modify or set aside the demand, whichever is earlier, to discuss and attempt to resolve all issues regarding compliance with the civil investigative demand. The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement may authorize the waiver of this requirement for routine third-party civil investigative demands or in other circumstances where he or she determines that a meeting is unnecessary. The meeting may be in person or by telephone.

(1) *Personnel.* The recipient must make available at the meeting personnel with the knowledge necessary to resolve any issues relevant to compliance with the demand. Such personnel could include individuals knowledgeable about the recipient's information or records management systems and/or the recipient's organizational structure.

(2) *ESI.* If the civil investigative demand seeks ESI, the recipient shall ensure that a person familiar with its ESI systems and methods of retrieval participates in the meeting.

(3) *Petitions.* The Bureau will not consider petitions to set aside or modify a civil investigative demand unless the recipient has meaningfully engaged in the meet and confer process described in this subsection and will consider only issues raised during the meet and confer process.

(d) *Compliance.* The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to negotiate and approve the terms of satisfactory compliance with civil investigative demands and, for good

cause shown, may extend the time prescribed for compliance.

(e) *Petition for order modifying or setting aside demand—in general.* Any petition for an order modifying or setting aside a civil investigative demand shall be filed with the Executive Secretary of the Bureau with a copy to the Assistant Director of the Office of Enforcement within 20 calendar days after service of the civil investigative demand, or, if the return date is less than 20 calendar days after service, prior to the return date. Such petition shall set forth all factual and legal objections to the civil investigative demand, including all appropriate arguments, affidavits, and other supporting documentation. The attorney who objects to a demand must sign any objections.

(1) *Statement.* Each petition shall be accompanied by a signed statement representing that counsel for the petitioner has conferred with counsel for the Bureau pursuant to section 1080.6(c) in a good-faith effort to resolve by agreement the issues raised by the petition and has been unable to reach such an agreement. If some of the matters in controversy have been resolved by agreement, the statement shall specify the matters so resolved and the matters remaining unresolved. The statement shall recite the date, time, and place of each such meeting between counsel, and the names of all parties participating in each such meeting.

(2) *Extensions of time.* The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to rule upon requests for extensions of time within which to file such petitions. Requests for extensions of time are disfavored.

(3) *Bureau investigator response.* Bureau investigators may, without serving the petitioner, provide the Director with a statement setting forth any factual and legal response to a petition for an order modifying or setting aside the demand.

(4) *Disposition.* The Director has the authority to rule upon a petition for an order modifying or setting aside a civil investigative demand. The order may be served on the petitioner via email, facsimile, or any other method reasonably calculated to provide notice of the order to the petitioner.

(f) *Stay of compliance period.* The timely filing of a petition for an order modifying or setting aside a civil investigative demand shall stay the time permitted for compliance with the portion challenged. If the petition is denied in whole or in part, the ruling will specify a new return date.

(g) *Public disclosure.* All such petitions and the Director's orders in response to those petitions are part of the public records of the Bureau unless the Bureau determines otherwise for good cause shown. Any showing of good cause must be made no later than the time the petition is filed.

§ 1080.7  **Investigational hearings.**

(a) Investigational hearings, as distinguished from hearings in adjudicative proceedings, may be conducted pursuant to a civil investigative demand for the giving of oral testimony in the course of any Bureau investigation, including inquiries initiated for the purpose of determining whether or not a respondent is complying with an order of the Bureau.

(b) Investigational hearings shall be conducted by any Bureau investigator for the purpose of hearing the testimony of witnesses and receiving documentary material, tangible things, or other information relating to any subject under investigation. Such hearings shall be under oath or affirmation and stenographically reported, and a transcript thereof shall be made a part of the record of the investigation. The Bureau investigator conducting the investigational hearing also may direct that the testimony be recorded by audio, audiovisual, or other means, in which case the recording shall be made a part of the record of the investigation as well.

(c) In investigational hearings, the Bureau investigators shall exclude from the hearing room all persons except the person being examined, his or her counsel, the officer before whom the testimony is to be taken, any investigator or representative of an agency with which the Bureau is engaged in a joint investigation, and any individual transcribing or recording such testimony. At the discretion of the Bureau investigator, and with the consent of the person being examined, persons other than those listed in this paragraph may be present in the hearing room. The Bureau investigator shall certify or direct the individual transcribing the testimony to certify on the transcript that the witness was duly sworn and that the transcript is a true record of the testimony given by the witness. A copy of the transcript shall be forwarded promptly by the Bureau investigator to the custodian designated in section 1080.13.

§ 1080.8  **Withholding requested material.**

(a) Any person withholding material responsive to a civil investigative demand or any other request for production of material shall assert a claim of privilege not later than the date set for the production of material. Such person shall, if so directed in the civil investigative demand or other request for production, submit, together with such claim, a schedule of the items withheld which states, as to each such item, the type, specific subject matter, and date of the item; the names, addresses, positions, and organizations of all authors and recipients of the item; and the specific grounds for claiming that the item is privileged. The person who submits the schedule and the attorney stating the grounds for a claim that any item is privileged must sign it.

(b) A person withholding material solely for reasons described in this subsection shall comply with the requirements of this subsection in lieu of filing a petition for an order modifying or setting aside a civil investigative demand pursuant to section 1080.6(e).

(c) Disclosure of privileged or protected information or communications produced pursuant to a civil investigative demand shall be handled as follows:

(1) The disclosure of privileged or protected information or communications shall not operate as a waiver with respect to the Bureau if:

(i) The disclosure was inadvertent;

(ii) The holder of the privilege or protection took reasonable steps to prevent disclosure; and

(iii) The holder promptly took reasonable steps to rectify the error, including notifying a Bureau investigator of the claim of privilege or protection and the basis for it.

(2) After being notified, the Bureau investigator must promptly return, sequester, or destroy the specified information and any copies; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if he or she disclosed it before being notified; and, if appropriate, may sequester such material until such time as a hearing officer or court rules on the merits of the claim of privilege or protection. The producing party must preserve the information until the claim is resolved.

(3) The disclosure of privileged or protected information or communications shall waive the privilege or protection with respect to the Bureau as to undisclosed information or communications only if:

(i) The waiver is intentional;

(ii) The disclosed and undisclosed information or communications concern the same subject matter; and

(iii) They ought in fairness to be considered together.

## § 1080.9   Rights of witnesses in investigations.

(a) Any person compelled to submit documentary material, tangible things, or written reports or answers to questions to the Bureau, or to testify in an investigational hearing, shall be entitled to retain a copy or, on payment of lawfully prescribed costs, request a copy of the materials, things, reports, or written answers submitted, or a transcript of his or her testimony. The Bureau, however, may for good cause deny such a request and limit the witness to inspection of the official transcript of the testimony. Upon completion of transcription of the testimony of the witness, the witness shall be offered an opportunity to read the transcript of his or her testimony. Any changes by the witness shall be entered and identified upon the transcript by the Bureau investigator with a statement of the reasons given by the witness for making such changes. The transcript shall then be signed by the witness and submitted to the Bureau unless the witness cannot be found, is ill, waives in writing his or her right to signature, or refuses to sign. If the signed transcript is not submitted to the Bureau within 30 calendar days of the witness being afforded a reasonable opportunity to review it, the Bureau investigator, or the individual transcribing the testimony acting at the Bureau investigator's direction, shall sign the transcript and state on the record the fact of the waiver, illness, absence of the witness, or the refusal to sign, together with any reasons given for the failure to sign.

(b) Any witness compelled to appear in person at an investigational hearing may be accompanied, represented, and advised by counsel as follows:

(1) Counsel for a witness may advise the witness, in confidence and upon the initiative of either counsel or the witness, with respect to any question asked of the witness where it is claimed that a witness is privileged to refuse to answer the question. Counsel may not otherwise consult with the witness while a question directed to the witness is pending.

(2) Any objections made under the rules in this part may be made only for the purpose of protecting a constitutional or other legal right or privilege, including the privilege against self-incrimination. Neither the witness nor counsel shall otherwise object or refuse to answer any question. Any objection during an investigational hearing shall be stated concisely on the record in a nonargumentative and nonsuggestive manner. Following an objection, the examination shall proceed and the testimony shall be taken, except for testimony requiring the witness to divulge information protected by the claim of privilege or work product.

(3) Counsel for a witness may not, for any purpose or to any extent not allowed by paragraphs (b)(1) and (2) of this section, interrupt the examination of the witness by making any objections or statements on the record. Petitions challenging the Bureau's authority to conduct the investigation or the sufficiency or legality of the civil investigative demand shall be addressed to the Bureau in advance of the hearing in accordance with § 1080.6(e). Copies of such petitions may be filed as part of the record of the investigation with the Bureau investigator conducting the investigational hearing, but no arguments in support thereof will be allowed at the hearing.

(4) Following completion of the examination of a witness, counsel for the witness may, on the record, request that the Bureau investigator conducting the investigational hearing permit the witness to clarify any of his or her answers. The grant or denial of such request shall be within the sole discretion of the Bureau investigator conducting the hearing.

(5) The Bureau investigator conducting the hearing shall take all necessary action to regulate the course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language. Such Bureau investigator shall, for reasons stated on the record, immediately report to the Bureau any instances where an attorney has allegedly refused to comply with his or her obligations under the rules in this part, or has allegedly engaged in disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language in the course of the hearing. The Bureau will thereupon take such further action, if any, as the circumstances warrant, including actions consistent with those described in 12 CFR 1081.107(c) to suspend or disbar the attorney from further practice before the Bureau or exclude the attorney from further participation in the particular investigation.

## § 1080.10   Noncompliance with civil investigative demands.

(a) In cases of failure to comply in whole or in part with Bureau civil investigative demands, appropriate action may be initiated by the Bureau, including actions for enforcement.

(b) The Director, the Assistant Director of the Office of Enforcement, and the General Counsel of the Bureau are authorized to:

(1) Institute, on behalf of the Bureau, an enforcement proceeding in the district court of the United States for any judicial district in which a person resides, is found, or transacts business, in connection with the failure or refusal of such person to comply with, or to obey, a civil investigative demand in whole or in part if the return date or any extension thereof has passed; and

(2) Seek civil contempt or other appropriate relief in cases where a court order enforcing a civil investigative demand has been violated.

## § 1080.11   Disposition.

(a) When the facts disclosed by an investigation indicate that an enforcement action is warranted, further proceedings may be instituted in Federal or State court or pursuant to the Bureau's administrative adjudicatory process. Where appropriate, the Bureau also may refer investigations to appropriate Federal, State, or foreign governmental agencies.

(b) When the facts disclosed by an investigation indicate that an enforcement action is not necessary or would not be in the public interest, the investigational file will be closed. The matter may be further investigated, at any time, if circumstances so warrant.

(c) The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to close Bureau investigations.

## § 1080.12   Orders requiring witnesses to testify or provide other information and granting immunity.

The Director has the nondelegable authority to request approval from the Attorney General of the United States for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004.

## § 1080.13   Custodians.

(a) The Bureau shall designate a custodian and one or more deputy custodians for material to be delivered pursuant to a civil investigative demand in an investigation. The custodian shall have the powers and duties prescribed by 12 CFR 1070.3 and section 1052 of the Act, 12 U.S.C. 5562. Deputy custodians may perform all of the duties assigned to custodians.

(b) Material produced pursuant to a civil investigative demand, while in the custody of the custodian, shall be for the official use of the Bureau in accordance with the Act; but such material shall upon reasonable notice to the custodian

be made available for examination by the person who produced such material, or his or her duly authorized representative, during regular office hours established for the Bureau.

### § 1080.14   Confidential treatment of demand material and non-public nature of investigations.

(a) Documentary materials, written reports, answers to questions, tangible things or transcripts of oral testimony the Bureau receives in any form or format pursuant to a civil investigative demand are subject to the requirements and procedures relating to the disclosure of records and information set forth in part 1070 of this title.

(b) Bureau investigations generally are non-public. Bureau investigators may disclose the existence of an investigation to potential witnesses or third parties to the extent necessary to advance the investigation.

Dated: June 4, 2012.

**Richard Cordray,**

*Director, Bureau of Consumer Financial Protection.*

[FR Doc. 2012–14047 Filed 6–28–12; 8:45 am]

BILLING CODE 4810–**AM–P**

---

**BUREAU OF CONSUMER FINANCIAL PROTECTION**

**12 CFR Part 1082**

[Docket No. CFPB–2011–0005]

**RIN 3170–AA02**

### State Official Notification Rule

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule.

---

**SUMMARY:** The Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010 (Dodd-Frank Act) requires the Bureau of Consumer Financial Protection (Bureau) to prescribe rules establishing procedures that govern the process by which State Officials notify the Bureau of actions undertaken pursuant to the authority granted to the States to enforce the Dodd-Frank Act or regulations prescribed thereunder. This final State Official Notification Rule (Final Rule) sets forth the procedures to govern this process.

**DATES:** The Final Rule is effective June 29, 2012.

**FOR FURTHER INFORMATION CONTACT:** Veronica Spicer, Office of Enforcement, Consumer Financial Protection Bureau, 1700 G Street NW., Washington, DC 20552, at (202) 435–7545.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010 (Dodd-Frank Act) was signed into law on July 21, 2010. Title X of the Dodd-Frank Act established the Bureau to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws. Section 1042 of the Dodd-Frank Act, 12 U.S.C. 5552, governs the enforcement powers of the States under the Dodd-Frank Act. Under section 1042(a), a State attorney general or regulator (State Official) may bring an action to enforce Title X of the Dodd-Frank Act and regulations issued thereunder. Prior to initiating any such action, the State Official is required to provide notice of the action to the Bureau and the prudential regulator, if any, pursuant to section 1042(b) of the Dodd-Frank Act. Section 1042(b) further authorizes the Bureau to intervene in the State Official's action as a party, remove the action to a Federal district court, and appeal any order or judgment.

Pursuant to section 1042(c) of the Dodd-Frank Act, the Bureau is required to issue regulations implementing the requirements of section 1042. On July 28, 2011, the Bureau promulgated the State Official Notification Rule (Interim Final Rule) with a request for comment. The comment period for the Interim Final Rule ended on September 26, 2011. After reviewing and considering the issues raised by the comments, the Bureau now promulgates the Final Rule establishing a procedure for the timing and content of the notice required to be provided by State Officials pursuant to section 1042(b) of the Dodd-Frank Act, 12 U.S.C. 5552(b).

## II. Summary of the Final Rule

Like the Interim Final Rule, the Final Rule implements a procedure for the timing and content of the notice required by section 1042(b), sets forth the responsibilities of the recipients of the notice, and specifies the rights of the Bureau to participate in actions brought by State Officials under section 1042(a) of the Dodd-Frank Act. In drafting the Final Rule, the Bureau endeavored to create a process that would provide both the Bureau and, where applicable, the prudential regulators with timely notice of pending actions and account for the investigation and litigation needs of State regulators and law enforcement agencies. In keeping with this approach, the Final Rule provides for a default notice period of at least ten calendar days, with exceptions for emergencies and other extenuating circumstances,

and requires substantive notice that is both straightforward and comprehensive. The Final Rule further makes clear that the Bureau can intervene as a party in an action brought by a State Official under Title X of the Dodd-Frank Act or a regulation prescribed thereunder, provides for the confidential treatment of non-public information contained in the notice if a State so requests, and provides that provision of notice shall not be deemed a waiver of any applicable privilege. In addition, the Final Rule specifies that the notice provisions do not create any procedural or substantive rights for parties in litigation against the United States or against a State that brings an action under Title X of the Dodd-Frank Act or a regulation prescribed thereunder.

## III. Legal Authority

Section 1042(c) of the Dodd-Frank Act authorizes the Bureau to prescribe regulations implementing the requirements of section 1042(b). In addition, the Bureau has general rulemaking authority pursuant to section 1022(b)(1) of the Dodd-Frank Act to prescribe rules to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws and to prevent evasions thereof.

## IV. Overview of Comments Received

In response to the Interim Final Rule, the Bureau received several comments. Four letters were received from associations representing the financial industry, two letters were received from financial industry regulators and supervisors, and one letter was received from an individual consumer. The Bureau also received a comment letter from a financial industry regulator in response to its **Federal Register** notification of November 21, 2011, regarding the information collection requirements associated with the Interim Final Rule pursuant to the Paperwork Reduction Act of 1995 (PRA), Public Law 104–13. All of the comments are available for review on *www.regulations.gov.*

The financial industry associations' comments fell into several general categories. Several comments expressed concerns about the Bureau's ability to maintain confidentiality for notification materials received by the Bureau. Other commenters requested clarity as to the type of actions for which the Bureau requires notification. One commenter requested that the Bureau require uniform interpretation by States of all Federal law within the Bureau's jurisdiction.

## CONSUMER FINANCIAL PROTECTION BUREAU
### Washington, D.C. 20552

### Notice to Persons Supplying Information

You have been asked to supply information or speak voluntarily, or directed to provide sworn testimony, documents, or answers to questions in response to a civil investigative demand (CID) from the Consumer Financial Protection Bureau (Bureau). This notice discusses certain legal rights and responsibilities. Unless stated otherwise, the information below applies whether you are providing information voluntarily or in response to a CID.

### A.    False Statements; Perjury

*False Statements.* Section 1001 of Title 18 of the United States Code provides as follows:

[W]hoever, in any matter within the jurisdiction of the executive ... branch of the Government of the United States, knowingly and willfully-- **(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact; **(2)** makes any materially false, fictitious, or fraudulent statement or representation; or **(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title ...[or] imprisoned not more than 5 years ..., or both.

*Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

Whoever ... having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly or that any written testimony, declaration, deposition, or certificate by him subscribed, is true willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true ... is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

### B.    The Fifth Amendment; Your Right to Counsel

*Fifth Amendment.* Information you provide may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Bureau or any other agency. If you are an individual, you may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to criminal liability, including fine, penalty or forfeiture.

*Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. For further information, you should consult Bureau regulations at 12 C.F.R. § 1080.9(b).

**C.**     Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to CID*. If you fail to comply with the CID, the Bureau may seek a court order requiring you to do so. If such an order is obtained and you still fail to supply the information, you may be subject to civil and criminal sanctions for contempt of court.

*Persons Requested to Supply Information Voluntarily*. There are no sanctions for failing to provide all or any part of the requested information. If you do not provide the requested information, the Bureau may choose to send you a CID or subpoena.

**D.**     Privacy Act Statement

The information you provide will assist the Bureau in its determinations regarding violations of Federal consumer financial laws. The information will be used by and disclosed to Bureau personnel and contractors or other agents who need the information to assist in activities related to enforcement of Federal consumer financial laws. The information may also be disclosed for statutory or regulatory purposes, or pursuant to the Bureau's published Privacy Act system of records notice, to:

- a court, magistrate, administrative tribunal, or a party in litigation;
- another federal or state agency or regulatory authority;
- a member of Congress; and
- others as authorized by the Bureau to receive this information.

This collection of information is authorized by 12 U.S.C. §§ 5511, 5562.

# **EXHIBIT B**

**Statement of Counsel Pursuant to 12 C.F.R. § 1080.6(e)(1).**

Prior to filing this Petition, counsel for the petitioner, █████████████

█████████, has conferred with counsel for the Consumer Financial Protection Bureau

("Bureau") pursuant to 12 C.F.R. § 1080.6(c) in a good-faith effort to resolve by

agreement the issues raised by the petition and has been unable to reach such an

agreement.

On November 30, 2016, Jenny Lee, counsel for ██, conferred by telephone with

Alanna Carbis and Leanne Hartmann, counsel for the Bureau, to discuss the Civil

Investigative Demand ("CID") and coordinate a date to meet-and-confer, including

coordination of travel should it be necessary to meet in person. Ms. Carbis explained that

Enforcement staff may lack authority to extend the time to meet-and-confer, but indicated

that Ms. Carbis would confer internally at the Bureau and confirm.

On December 1, 2016, counsel for the Bureau requested a meeting with ██'s

counsel to discuss whether ██ would be amenable to █████████████████.

This call was scheduled for December 2. On December 2, 2016, the ████████████

█████████████ separately contacted ██'s counsel to request █████████████

between ██ and the ████████████. On December 2, 2016, counsel for ██ and the

Bureau met to discuss both the Bureau's request for █████████████ and ██'s

corresponding request to ████████████████████████████.

On December 6, 2016, ██ was informed, through counsel, that ████████████

████████████████████████████████████████████████████████████████

██, and that ██ was required to meet-and-confer by December 8, 2016. On December

8, 2016, between 5:01 pm to 6:07 pm Eastern Standard Time, the following parties

participated in a telephonic meet-and-confer pursuant to 12 C.F.R. §§ 1080.6(c) and (e)(1): the Bureau, represented by Alanna Carbis, Leanne Hartmann, Darcie Polzien, and Michael Williams; ███████, represented by ████████████; and ███, represented by Jenny Lee and Chris Jones.

During this conference, counsel for ███ requested that the Bureau withdraw the CID, and offered to share information informally with the Bureau outside of the CID process, while reserving all rights, in order to enhance the Bureau's and the ███ ███████'s ability to understand ███'s business. Counsel for the Bureau refused this offer and declined to withdraw the CID. Counsel for ███ stated that the Bureau lacked authority and jurisdiction to issue the CID, and a discussion occurred regarding these topics. The parties were unable to reach a resolution. Counsel for ███ stated that, absent a voluntary withdrawal of the CID, ███ plans to file a petition to set aside the CID. Counsel for the Bureau stated that such a petition is within ███'s rights under Bureau regulations. The parties agreed that the petition would be due on December 13, 2016.


Date:  December 13, 2016

J.H. Jennifer Lee


2

# **EXHIBIT C**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th of December, 2016, pursuant to 12 C.F.R. § 1080.6(e), I caused the foregoing Petition to Set Aside or Modify the Civil Investigative Demand to be served via email upon the Executive Secretary of the Consumer Financial Protection Bureau and the Assistant Director for the Bureau's Office of Enforcement.


Date:  December 13, 2016

J.H. Jennifer Lee