**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JOHN DOE COMPANY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-0049 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 25 |
| | : | | |
| CONSUMER FINANCE PROTECTION | : | | |
| BUREAU, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION; GRANTING IN PART PLAINTIFF'S MOTION FOR AN INJUNCTION PENDING AN OPPORTUNITY TO PETITION THE COURT OF APPEALS FOR A STAY**

## I.  INTRODUCTION

In *PHH Corporation v. CFPB*, a panel of the D.C. Circuit held that that the Consumer Financial Protection Bureau is unconstitutionally structured, because the Director is removable only for cause.  Without democratic accountability through at-will termination by the President of the United States, the *PHH Corporation* panel reasoned, the Director has massive, unchecked power that he can use to infringe upon citizens' liberty.  As a remedy, instead of striking the entire CFPB or its enabling statute, the panel simply excised the unconstitutional for-cause removal provision, leaving the CFPB functioning as an executive agency.  But because the CFPB predictably petitioned for a rehearing *en banc*, the panel stayed its mandate until the CFPB's petition is resolved.  Thus, after the mandate was stayed the Director continued to be removable only for cause, despite the panel having found that that CFPB was unconstitutionally structured.

Shortly after this limbo period—the time between when a panel of the D.C. Circuit found the CFPB unconstitutional and the issuance of a circuit mandate—began, the CFPB issued a civil investigative demand to John Doe Company, requesting information relevant to its investigation. John Doe Co. petitioned the CFPB to have the CID set aside on the grounds that the CFPB was acting while unconstitutionally structured or, in the alternative, to have the CID treated confidentially, but the Director denied the company's request, informing it that the CFPB would be posting the CID and order to the agency's public website shortly.  John Doe Co. raced to court, requesting preliminary injunctive relief that would prevent the allegedly unconstitutionally-structured CFPB from taking further adverse actions against the company. But, on February 16, 2017, the D.C. Circuit granted the CFPB's petition for a rehearing en banc in *PHH Corporation*, vacating the panel decision and eliminating the state of limbo on which John Doe Co.'s request for injunctive relief was based.

Although at some later point in this case the Court may very well be convinced that, as the *PHH Corporation* panel held, the CFPB was unconstitutionally structured during the course of its investigation, John Doe's briefing of the preliminary injunction motion was directly undermined by the vacatur of the *PHH Corporation* opinion.  Thus, based on the current briefing, Plaintiff has failed to show that it is substantially likely to succeed in its pursuit of injunctive relief that would prevent the agency from taking any adverse action against John Doe Co.  Moreover, Plaintiff has not shown that it faces likely irreparable harm in the absence of a preliminary injunction.  Accordingly, the Court denies its motion.  However, because of the novel issues presented in this case and the Plaintiff's partial inability to remedy them if the CFPB is permitted to publicize John Doe Co.'s identity, the Court will issue a narrow injunction to

preserve John Doe Co.'s rights for a short period of time so that it may seek a stay from the Court of Appeals.

## II.  LEGAL BACKGROUND

### A.  *PHH Corporation v. CFPB*

In October 2016, a panel of the D.C. Circuit held that the CFPB is unconstitutionally structured.  *See PHH Corp. v. CFPB*, 839 F.3d 1, 8 (D.C. Cir. 2016), *reh'g en banc granted*, D.C. Cir. No. 15-1177, Feb. 17, 2017.  In *PHH Corporation*, a mortgage lender who was subject to a CFPB enforcement action petitioned the D.C. Circuit for review, arguing that the agency's "status as an independent agency headed by a single Director violates Article II of the Constitution."  *Id.* at 7.  Judge Kavanaugh, writing for the panel, found that the existence of a single agency director, insulated from democratic accountability by a for-cause removal provision, presented serious separation-of-powers issues.  *See id.* at 7–8.  He called "the single-Director structure of the CFPB . . . a gross departure from settled historical practice," and reasoned that "[t]he . . . concentration of enormous power in a single, unaccountable, unchecked Director . . . poses a far greater risk of arbitrary decisionmaking and abuse of power, and a far greater threat to individual liberty, than does a multi-member independent agency."  *Id.* at 8.  He went so far as to say that the CFPB Director's "enormous power over American business, American consumers, and the overall U.S. economy" gave him "more unilateral authority than any other officer in any of the three branches of the U.S. government, other than the President."  *Id.* at 7.

Judge Randolph, in a short concurrence, did not take issue with Judge Kavanaugh's analysis, but stated that he "believe[d] that the ALJ who presided over the hearing was an 'Inferior Officer'" that should have been appointed by the President.  *Id.* at 55 (Randolph, J.,

concurring).  Judge Henderson, in a longer concurrence, would have found for the plaintiff on statutory grounds and avoided the constitutional issues altogether.  *See id.* at 56 (Henderson, J., concurring) ("[M]y colleagues don't stop [at the statutory issue].  Instead, they unnecessarily reach PHH's constitutional challenge, thereby rejecting one of the most fundamental tenets of judicial decisionmaking. With respect, I cannot join them in this departure from longstanding precedent.").

In fashioning a remedy, the panel decided between striking down the entire Dodd–Frank Act, striking down the portions creating the CFPB, and "narrowly strik[ing] down and sever[ing] the one for-cause removal provision that is the source of the constitutional problem." *Id.* at 37. Judge Kavanaugh favored the latter approach because "[g]enerally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Id.* (quoting *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 508 (2010)).  The court thus held that the Dodd–Frank Act and the CFPB would "remain 'fully operative as a law' without the for-cause removal restriction." *Id.* at 38 (quoting *Free Enter. Fund*, 561 U.S. at 508) ("Operating without the for-cause removal provision and under the supervision and direction of the President, the CFPB may still 'regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws[.]'").  "The CFPB therefore [was to] continue to operate and to perform its many duties, but . . . as an executive agency." *Id.* at 8.  With the CFPB functioning as an executive agency, the D.C. Circuit found no constitutional impediment to the enforcement of the administrative order against PHH Corporation. *Id.* at 39 ("Because our constitutional ruling will not halt the CFPB's ongoing operations or the CFPB's ability to uphold the $109 million order

against PHH, we must also consider PHH's statutory objections to the CFPB enforcement action in this case.").

The D.C. Circuit withheld issuance of the mandate until "seven days after disposition of any timely petition for rehearing or petition for rehearing en banc." Order, Document No. 16410102, USCA Case No. 15-1177, October 11, 2016. The CFBP did indeed timely petition for rehearing en banc, effectively staying the mandate until after the petition is resolved. *See* CFPB's Pet. Reh'g En Banc, Doc. No. 1646917, USCA No. 15-1177, November 18, 2016. On February 16, 2017, the D.C. Circuit granted the CFPB's petition, vacating the panel's decision. *See* Order on Pet. for Reh'g en banc, Doc. No. 1661681, USCA No. 15-1177, Feb. 17, 2017. Neither side has provided briefing on the underlying constitutional issue addressed by Judge Kavanaugh's opinion in *PHH Corporation*.

## B. Civil Investigative Demands

Under 12 U.S.C. § 5562, the CFPB has the power to issue civil investigative demands ("CIDs") "[w]henever the Bureau has reason to believe that any person may be in possession, custody, or control of any . . . information[] relevant to a violation." § 5562(c)(1); *Laverpool v. Taylor Bean & Whitaker Reo LLC*, No. 16-cv-690, 2017 WL 90335, at *10 (D.D.C. Jan. 10, 2017) (Kollar-Kotelly, J.) ("The[se] provisions of the Dodd–Frank Act . . . relate to the function and powers of [CFPB], including the authority to issue [CIDs] and to seek enforcement of CIDs by the district court."). The CID is required to state the nature of the alleged violation and may require the recipient to produce documents or testimony related to the investigation. *See* 12 U.S.C. § 5562(c)(2)–(3). "CFPB investigations are generally confidential." *John Doe Co. No. 1 v. CFPB*, 195 F. Supp. 3d 9 (D.D.C. 2016) (Moss, J.). Materials received from a CID are

"subject to requirements and procedures regarding confidentiality, in accordance with rules established by the [CFPB]."  12 U.S.C. § 5562(d)(1).

Recipients of CIDs may petition for the demand to be set aside and may raise constitutional "right[s]" in their petitions.  *Id.* § 5562(f).  CIDs may be set aside if they are issued "outside the scope of the [CFPB]'s authority."  *FCPB v. Accrediting Council for Indep. Colleges & Sch.*, 183 F. Supp. 3d 79, 81 (D.D.C. 2016) (Leon, J.).  Under 12 C.F.R. § 1080.6(g), all petitions to set aside CIDs and the CFPB's orders in response to those petitions "shall become part of the public records" unless the target of the CID is granted confidential treatment.  This regulation is virtually identical to the Federal Trade Commission ("FTC") regulation governing appeals of CIDs.  *Compare id. with* 16 C.F.R. § 2.10(d).  The FTC regulation has been in effect since 1980.  *See* 45 Fed. Reg. 36338.

CIDs are not self-enforcing.  Under 12 U.S.C. § 5562(e)(1), when the target of a CID fails to comply, the CFPB is required to petition a district court for a court order directing the target to comply with the CID.  *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 108 (D.D.C. 2013), *aff'd*, 785 F.3d 684 (D.C. Cir. 2015) ("CIDs are not self-enforcing, and [the statute] does not impose a fine or penalty for failure to comply with a CID.").  In that forum, the target of the CID may raise constitutional challenges, including to the CFPB's enabling statute.  *See, e.g.*, *id.* at 115–16.

### III.  FACTUAL BACKGROUND

### A.  John Doe Co.

Plaintiff John Doe Co. is a California limited liability company with its principal place of business in the Philippines.  *See* Verified Compl. ("Compl.") ¶ 10.[1]  John Doe Co. "is in the business of purchasing and selling the right to certain income streams."  *Id.* ¶ 15.  Several news articles and press releases that Defendants introduce as evidence, show that John Doe Co. and the broader industry with which it is involved have been the subject of investigation from several enforcement agencies and scrutiny from several public officials.  *See generally* Exhibits to Defs.' Opp'n to Mot. for Prelim. Inj., ECF No. 15-4.  In addition to six state agencies,[2] the U.S. Government Accountability Office ("GAO") has publicly recommended that the CFPB and FTC investigate companies like John Doe Co.  *See* Defs.' Opp'n at 14 (outlining multiple sources, none of which Plaintiff challenged).  These exhibits have been redacted, but neither side seems to dispute that John Doe Co. has been the subject of considerable negative publicity throughout the past few years.  *See id.*; T.R.O. Tr. 16–17 (Statement by Christopher Jones, counsel to John Doe Co.) (acknowledging that John Doe Co. has been subject to "state agenc[ies] enforcing state law").[3]  Rather, the parties dispute the relative harm that state agencies can do to John Doe Co.

---

[1] The complaint is verified by the manager of John Doe Co.  *See* Compl. at 20.

[2] At the hearing held on February 17, 2017, counsel for CFPB indicated that yet another governmental entity had publicly expressed an investigative interest in John Doe Co.  The details of this assertion are not yet in the record.

[3] Due to the time-sensitive nature of this motion, the Court cites to the rough transcript of the February 9, 2017 hearing.

compared to actions by the CFPB.[4]  *See* T.R.O. Tr. 17 (Statement by Christopher Jones) (calling the CFPB "the 800-pound gorilla in the regulatory room" compared to other regulatory bodies).

## B.   The CFPB's Investigation

In November 2016—a month after a panel of the D.C. Circuit ruled that the CFPB is unconstitutionally structured—the CFPB served a Civil Investigative Demand ("CID") on John Doe Co.  *Id.* ¶¶ 2, 4.  John Doe Co. petitioned to have the CID set aside or, in the alternative, given confidential treatment, but the Director of the CFPB denied its requests.  *Id.* ¶¶ 5–6.  In making his decision, the Director stated that the "constitutional challenge [was] not properly raised in th[e] administrative hearing . . . because government agencies may not entertain a constitutional challenge to authorizing statutes."  *Id.* ¶ 58.  The CFPB informed John Doe Co. that the CID and Director's decision would be posted to its public website on January 13, 2017. *Id.* ¶ 6.

Plaintiff maintains that such publication would "irreparabl[y] harm" its business and goodwill by "irreversibly branding Plaintiff's business as unfair, deceptive, abusive, and illegal." *Id.* ¶¶ 7, 61.  Plaintiff, through its manager, claims that "most" of its 100+ employees would "immediately begin looking for other employment" were they to become aware of an

---

[4] After Defendants filed their opposition to the motion, Plaintiff submitted three expert affidavits and a Wall Street Journal article in support of its reply.  *See* Sarah J. Auchterlonie Aff., ECF No. 18; Roy Shapira Aff., ECF No. 19; Pl.'s Manager Aff., ECF No. 20; Pl.'s Reply Supp. Mot. T.R.O. & P.I., Ex. A, ECF No. 21-1.  Under LCvR 65.1(c), supplemental affidavits in support of a motion for a preliminary injunction "may be filed only with permission of the Court."  Plaintiff never sought such permission.  Although these exhibits would not significantly affect the Court's analysis either way, because John Doe Co. "never sought this Court's leave to file its supplemental declaration[s,] . . . [they] shall not be considered."  *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 26 (D.D.C. 2012).  Regardless, the information contained in those exhibits is either irrelevant to the issues at hand or too conclusory and overgeneralized to alter the Court's irreparable harm analysis.

investigation, because a CFPB investigation "imperils [the company's] very existence." *Id.* ¶ 62. Plaintiff also claims that its service providers—which are necessary for its business—would "sever ties" with Plaintiff to avoid entanglement with the CFPB. *Id.* ¶ 63. Although the complaint is verified by the manager of John Doe Co., there are no empirical examples or other figures supporting his or her conclusions. *See* Compl. ¶¶ 59–63.

## IV.  ANALYSIS

Plaintiff asks the Court to enjoin the CFPB from taking any "action adverse to Plaintiff—including any action in furtherance of the civil investigative demand served on Plaintiff, such as publishing Plaintiff's petition to set aside or modify the demand or initiating any enforcement action against Plaintiff" until the Court has made a final determination. *See* Proposed Order, Pl.'s Mot. Prelim. Inj. at 7, ECF No. 7. "[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers . . . ." *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989). In general, courts grant preliminary injunctions only when the moving party shows "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The moving party must show some level of irreparable injury to prevail on a motion for a preliminary injunction. *See id.* ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.").

The Court finds that, in light of the D.C. Circuit's recent vacatur of the *PHH Corporation* decision and because even the remedy in *PHH Corporation* would not provide Plaintiff's requested relief, Plaintiff is unlikely to succeed on the merits.  The Court further finds that John Doe Co. is unlikely to suffer irreparable harm in the absence of a preliminary injunction.  Because Plaintiff does not make a strong showing on either of these factors, the Court will deny its request for a preliminary injunction.  However, because significant portions of Plaintiff's sought-after remedy would become moot if the CFPB were allowed to publish John Doe Co.'s identity, the Court will narrowly enjoin the CFPB from publicizing its identity until Plaintiff has an opportunity to petition the Court of Appeals for a stay of the Court's order.

### A.  Likelihood of Success on the Merits

John Doe Co. argues that it is substantially likely to succeed on the merits of this action, because a panel of the D.C. Circuit held that the CFPB is unconstitutionally structured, yet a mandate curing the constitutional deficiency has not taken effect.  *See* Pl.'s Mem. Supp. Mot. T.R.O. & Prelim. Inj. ("Pl.'s Mot.") at 11–12, 14–15, ECF No. 7-1.  Notably, although Plaintiff maintains that the vacatur of the D.C. Circuit's panel opinion does not affect its motion, Plaintiff has not provided briefing on the constitutional question, instead relying wholesale on Judge Kavanaugh's opinion.

The Court is not bound by the vacated D.C. Circuit panel opinion in *PHH Corporation*. *Ass'n of Civilian Technicians, Montana Air Chapter v. Fed. Labor Relations Auth.*, 756 F.2d 172, 176 (D.C. Cir. 1985) (quoting *Brewster v. Comm'r*, 607 F.2d 1369, 1373 (D.C. Cir.) (per curiam), *cert. denied*, 444 U.S. 991 (1979)).  Without briefing on the constitutional questions surrounding the structure of the CFPB, the Court is not in a position to find that John Doe Co. has a high likelihood of succeeding on an eventual adjudication of those constitutional claims.

*See, e.g. Washington v. Gov't Employees Ins. Co.*, 769 F. Supp. 383, 388 (D.D.C. 1991).  Thus, the Court is disinclined to exercise its equitable, discretionary power to grant the extraordinary relief of a preliminary injunction.

But even if the Court were to adopt Judge Kavanaugh's reasoning based merely on the panel's decision in *PHH Corporation*, Plaintiff would be unlikely to obtain the relief it seeks. This is because, in that situation, the Court would also be likely to adopt Judge Kavanaugh's narrow remedy.  *Cf. US JVC Corp. v. United States*, 184 F.3d 1362, 1365 (Fed. Cir. 1999) (noting that in cases when courts are bound by another court's reasoning, the court must also "ensure that . . . remedies are consistent" with that reasoning).  John Doe Co. has not briefed any argument otherwise, and accordingly the most obvious remedy would be the one that Judge Kavanaugh has already crafted.

Thus, assuming that the Court were to agree with Judge Kavanaugh, that agreement would also likely doom John Doe Co.'s prospect for its sought-after remedy.  As the panel held, the proper remedy for the constitutional infirmity is to excise the for-cause removal provision, not gut the CFPB or Dodd–Frank Act altogether.  *See* 839 F.3d at 39.  Thus, the Court would likely grant the same narrow relief that the panel did in *PHH Corporation*, which would still allow the CFPB to pursue enforcement actions against John Doe Co.  It follows that, even assuming John Doe Co. is correct about the CFPB's unconstitutional structure, Plaintiff's likelihood of success with respect to obtaining its sought-after remedy is low.  For the same reason, the Court is not inclined to use its equitable powers to afford Plaintiff the extraordinary remedy of a preliminary injunction, let alone the dramatic preliminary injunction Plaintiff seeks.

## B.  Likelihood of Irreparable Harm

Plaintiff argues that without a preliminary injunction it will incur irreparable harm in three ways.  First, John Doe Co. claims that its liberty will be infringed upon by the existence of an entity wielding unchecked executive powers.  *See* Compl. ¶ 7.  Second, it contends that compliance with the allegedly unconstitutionally-issued CID "would be . . . expensive, time-consuming, and exceptionally disruptive to Plaintiff's business."  Compl. ¶ 54.  Third, Plaintiff claims that the publication of the CID would irreparably harm its business interests.  Compl. ¶ 60.

The D.C. Circuit "has set a high standard for irreparable injury," requiring that the injury "be both certain and great," and "actual and not theoretical."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (internal citations and quotations omitted).  "The moving party must show '[t]he injury complained of is of such *imminence* that there is a "clear and present" need for equitable relief to prevent irreparable harm.'"  *Id.* (alteration in original) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  To meet the standard, "the harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm."  *Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999).  The moving party must also show that the threatened injury is "beyond remediation" with other forms of relief.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  In general, economic loss alone does not warrant the extraordinary remedy of a preliminary injunction.  *See Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  "However, economic loss that threatens the survival of the movant's business can amount to irreparable harm."  *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (citing *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C.

2005)).  As set forth below, John Doe Co. has not established a likelihood of irreparable harm on any of the three grounds it has identified.

First, the prospect that its liberty will be infringed upon—separate from the issuance of the CID and impending publication—could be remedied if and when the CFPB brings an enforcement action against John Doe Co.  Plaintiff's argument appears to be that, as an entity regulated by the CFPB, it is being harmed by the CFPB's allegedly unconstitutional structure even if the CFPB does nothing further.  But this formulation of alleged irreparable harm is inconsistent with this Circuit's handling of cases involving enforcement actions pursued in an unconstitutional manner or by an unconstitutional entity because having to submit oneself to an enforcement proceeding typically does not constitute irreparable harm.  *See Jarkesy v. SEC*, 803 F.3d 9, 26 (D.C. Cir. 2015); *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987).  In *Jarkesy*, the plaintiff sued claiming that the SEC's enforcement proceeding—which was ongoing in another forum—infringed upon his constitutional rights.  *See* 803 F.3d at 397.  Because "the expense and annoyance of litigation is part of the social burden of living under government," the D.C. Circuit found that the burden of impending litigation did not constitute irreparable harm. *Id.* at 411 (internal citation omitted).  Likewise in *Deaver*, where the plaintiff sued to enjoin his ongoing prosecution by an independent counsel—which he argued violated separation of powers principles—the D.C. Circuit held that the cost of having to defend a criminal prosecution was "not recognized as irreparable injuries justifying an equitable remedy."  822 F.2d at 69 (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)).  Thus, neither potential investigation by the CFPB nor the bringing of an enforcement action present irreparable injuries that the Court is willing to enjoin.  Although Plaintiff may be able to bring such a "free-standing" liberty interest claim,

untethered to any action by the CFPB, that does not mean that it entitles it to emergency injunctive relief now.

Moreover, Plaintiff has not produced any evidence that the President wishes to remove the Director of the CFPB (for reasons other than those permitted under the statute) but is restrained from doing so simply because the full D.C. Circuit has not resolved the issue.  Absent any further evidence that Plaintiff is being concretely harmed by the current state of affairs caused by the vacatur of the *PHH Corporation* panel decision, the Court will follow the D.C. Circuit's lead and allow the legal wrangling to play out.[5]

Second, there is little risk of irreparable harm with respect to the CID in the absence of a preliminary injunction.  CFPB CIDs are not self-enforcing, and accordingly do not subject the recipient to civil or criminal penalties for non-compliance.  *See, e.g.*, *Morgan Drexen, Inc.*, 979 F. Supp. 2d at 108.  In the absence of an injunction, John Doe Co. need not do anything.  If the CFPB decides to bring an enforcement action against John Doe Co., Plaintiff will have an adequate federal forum in which to raise its constitutional arguments wherever the CFPB brings suit.  *See* 12 U.S.C. § 5562(e)(1).  In the meantime, John Doe Co. has failed to show that it will suffer irreparable harm while awaiting an enforcement action that may never come.[6]

Third, Plaintiff has not made a strong showing that it will suffer irreparable harm from the CFPB's impending publication of the CID and order denying the petition to set the CID aside.  Plaintiff's claims fail because they are both incremental and conclusory.

---

[5] Plaintiff does not allege that it has a right not to be investigated: it simply argues that the CFPB, led by Director Cordray, cannot investigate it presently, because under the statute he can only be removed for cause.  But it is clear that the FTC could lead an identical investigation.

[6] Plaintiff previously expressed a concern that the CFPB would forum shop and bring an enforcement action in a circuit not bound by the *PHH Corporation* case law.  Vacatur of that opinion has eliminated that strategic advantage.

Plaintiff's publication claims are incremental because the public is already well aware that John Doe Co. has been the subject of state-level investigations and that the entire industry is under scrutiny from the GAO, CFPB, and FTC.  *See* Defs.' Opp'n at 14; Pl.'s Reply at 19; T.R.O. Tr.at 16.  Plaintiff does not dispute that the GAO, FTC, and CFPB have all publicly suggested that Plaintiff's entire industry was subject to investigation.  *See* Pl.'s Reply.  In fact, Plaintiff concedes that the publicity surrounding these investigations has already caused it harm.  *See* Second Mgr.'s Decl. ¶¶ 5–6, ECF No. 20 (indicating that John Doe Co.'s manager is personally aware of vendors that have ceased doing business with John Doe Co. and employees who have left John Doe Co. because of state regulatory investigations).  Thus, plaintiff's conclusory argument that its employees and service providers would be caught off-guard by the publication of the CID-related documents appears dubious.  Further, because as noted above a CID may be issued to any entity that may be in possession of information related to an investigation, *see* 12 U.S.C. § 5562(c)(1), the publication of the CID-related documents will only establish that, at most, the CFPB is potentially investigating John Doe Co., not that it has brought an enforcement action against it.  John Doe Co. has utterly failed to quantify in any way the impact on its operations that the incremental addition of this limited information to the public sphere will have.  Consequently, Plaintiff has failed to show that the publication of the CID-related documents would be the straw that broke the camel's back for purposes of irreparable harm.

Plaintiff's publication claims are conclusory because they are supported only by overgeneralized statements rather than empirical examples or, for that matter, any data.  The conclusory assertion by the manager of John Doe Co. that, if the CID-related documents are published, most of its 100 employees would immediately begin looking for new employment is

far from self-evident, and Plaintiff does not provide any factual support for that assertion.  *See* Compl.  Moreover, there is no evidence in the record demonstrating how the existence of a CID—which, again, may be issued to "any person . . . in possession, custody, or control of any . . . information[] relevant to a violation," *see* § 5562(c)(1)—would cause John Doe Co. significant harm given that the GAO, CFPB, and FTC have all publicly stated that the industry is the subject of investigations.  *See* Defs.' Opp'n at 14–15 (citing several redacted, but unchallenged, sources).  The Court's doubt concerning the extent of the alleged harm is compounded by the fact that John Doe Co. cannot point to a single instance where the publication of a CID has led to a company going out of business, or even suffering significant financial harm, under either the CFPB regulation or the nearly-identical FTC regulation, which has been in effect for nearly 40 years.  *See* Pl.'s Reply (failing to address the CFPB's argument).  Needless to say, despite a long history of the operation of the allegedly harmful publication practice, Plaintiff has failed to put forth any non-speculative evidence demonstrating that the CFPB's publication of the CID and other relevant documents threatens its very existence or will result in significant, quantifiable financial harm.

*        *        *

Because Plaintiff has shown neither a substantial likelihood of success on the merits nor a likelihood that it will suffer irreparable harm absent the issuance of a preliminary injunction, the Court need not consider the interests of other interested parties or the public.  But suffice it to say that the public has a strong interest in the vigorous enforcement of consumer protection laws.  The Court will deny Plaintiff's motion for a temporary restraining order and preliminary injunction.

## C.  Stay Pending Appeal

Having denied Plaintiff's motion for a preliminary injunction, the Court next considers Plaintiff's motion for an injunction pending appeal.  *See* Pl.'s Mot. T.R.O. & Inj. Pending Appeal, ECF No. 25.  The Court specifically considers whether to preserve John Doe Co.'s rights so that it has time to petition the D.C. Circuit for a stay of this ruling insofar as it allows the CFPB to publicize its identity.  Under Federal Rule of Civil Procedure 62(c), "the [C]ourt may . . . grant an injunction on . . . terms that secure the opposing party's rights."  To determine whether to grant an injunction to preserve a losing party's rights while it petitions the Court of Appeals for a stay, the Court looks to four factors: (1) whether the case presents a serious legal question, *see Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 593 F. Supp. 2d 156, 158 (D.D.C. 2009); (2) "the likelihood that the losing party will be irreparably harmed absent a stay;" (3) "the prospect that others will be harmed if the court grants the stay;" and (4) the public's interest, *see Loving v. IRS*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013).  "A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)."  *People for the Am. Way Found. v. U.S. DOE*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).

Although the Court believes its holding correct, as Judge Kavanaugh's opinion makes clear, the constitutionality of the CFPB's structure does present a serious legal question.  It appears from how the D.C. Circuit panel treated the CFPB in *PHH Corporation* that the Director's actions need not be set aside nor the CFPB's investigations be immediately halted. But this case may present a unique situation because the Director's decision to deny confidential

treatment if effectuated before a decision by the full D.C. Circuit cannot be meaningfully remedied by a subsequent remand to the agency.  As a result, the first factor weighs in favor of John Doe Co.

The second factor—a strong showing of which can obviate the need for a strong showing in the first factor, *see People for the Am. Way Found.*, 518 F. Supp. 2d at 177—also weighs heavily in favor of John Doe Co.  In addition to weighing the likelihood that the irreparable injury will occur, "[t]he Court must consider the significance of the change from the status quo which would arise in the absence of a stay." *CREW*, 593 F. Supp. 2d at 162 (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002)).  The Court may also consider the irreparable harm that would be present under the appellant's competing legal interpretation.  *See Judicial Watch*, 230 F. Supp. 2d at 15.  Courts routinely issue injunctions to stay the status quo when the trial court's order would otherwise allow the prevailing party to engage in actions that would moot the losing party's right to appeal.  *See People for the Am. Way Found.*, 518 F. Supp. 2d at 177 (D.D.C. 2007) (citing *John Doe Agency, et al. v. John Doe Corp.*, 488 U.S. 1306, 1308–09 (1989) (Marshall, J., in chambers)).  Like in *Judicial Watch*, "[t]here is no doubt that, if [plaintiff's] premise" that the Director cannot constitutionally release its identity is correct, "defendants would suffer irreparable harm if the proceedings before this Court were not stayed to enable them to seek appellate review." *See* 230 F. Supp. 2d at 15.  Absent today's order, the CFPB would no longer have had any legal obligation to refrain from publicly disclosing Plaintiff's identity or the CID-related documents. If it were to do so, neither this Court nor the Court of Appeals could un-ring the bell, and significant portions of Plaintiff's sought-after remedy would become moot.  Thus, the second factor weighs heavily in favor of John Doe Co.

The third factor may weigh in favor of the CFPB, but not significantly.  As noted above, the Court queries just how harmful publication of Plaintiff's identity would be to John Doe Co. The company has already been the subject of, at least, six state-level investigatory proceedings and at least three federal agencies have publicly criticized the industry as a whole.  Although the CFPB's goals may be somewhat frustrated in the interim, the order will not enjoin it from continuing its investigation, so long as it does so without publicly disclosing the name of the company for a short, additional period of time.

Finally, for similar reasons, the public would not be significantly affected by an order temporarily preserving the status quo.  The injunction will not interfere with the CFPB's investigatory powers outside the context of the disclosure of John Doe Co.'s identity.  Moreover, the public has already been warned about this company—and, indeed, the broader industry—by governmental agencies at both the state and federal levels.

Weighing all four factors, the Court concludes that a narrow injunction preserving John Doe Co.'s ability to petition the D.C. Circuit for a stay is warranted.  Although the Court believes its conclusion is correct, John Doe Co. raises a novel legal question.  Once the CID-related documents are published, aspects of Plaintiff's sought-after remedy will become moot, leaving Plaintiff irreparably injured if indeed the CFPB's actions were not constitutionally permissible.  Because these factors weigh strongly in favor of John Doe Co. and the other factors do not weigh strongly either way, the Court will enjoin the CFPB from taking any actions that expose John Doe Co.'s identity for two additional weeks so that John Doe Co. may have a chance to petition the D.C. Circuit for a stay of this Court's order pending any appeal.

**V.  CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a temporary restraining order and a preliminary injunction is denied, and Plaintiff's motion for an injunction pending appeal is granted in part.  An order consistent with this Memorandum Opinion is separately issued.

Dated:  February 17, 2017                                    RUDOLPH CONTRERAS
                                                                      United States District Judge